# 22-3068

## United States Court of Appeals
## for the Second Circuit

NADINE GAZZOLA, individually, and as co-owner, President, and as BATFE Federal Firearms Licensee Responsible Person for Zero Tolerance Manufacturing, Inc., *et al.*,

*Plaintiffs-Appellants*,

v.

KATHLEEN HOCHUL, in her Official Capacity as Governor of the State of New York, STEVEN A. NIGRELLI, in his Official Capacity as the Acting Superintendent of the New York State Police, ROSSANA ROSADO, in her Official Capacity as the Commissioner of the Department of Criminal Justice Services of the New York State Police, LETICIA JAMES, in her Official Capacity as the Attorney General of the State of New York,

*Defendants-Appellees.*

[additional parties listed on following page]

On Appeal from the United States District Court
for the Northern District of New York

## BRIEF FOR DEFENDANTS-APPELLEES

BARBARA D. UNDERWOOD
*Solicitor General*
JEFFREY W. LANG
*Deputy Solicitor General*
BEEZLY J. KIERNAN
*Assistant Solicitor General*
*of Counsel*

LETITIA JAMES
*Attorney General of the
State of New York*
Attorney for Defendants
The Capitol
Albany, New York 12224
(518) 776-2023

Dated: March 1, 2023

SETH GAZZOLA, individually, and as co-owner, Vice President, and as BATFE FFL Responsible Person for Zero Tolerance Manufacturing, Inc., JOHN A. HANUSIK, individually, and as owner and as BATFE FFL Responsible Person for d/b/a AGA Sales, JIM INGERICK, individually, and as owner and as BATFE FFL Responsible Person for Ingerick's LLC, d/b/a Avon Gun & Hunting Supply, CHRISTOPHER MARTELLO, individually, and as owner and as BATFE FFL Responsible Person for Performance Paintball, Inc. d/b/a Ikkin Arms, MICHAEL MASTROGIOVANNI, individually, and as owner and BATFE FFL Responsible Person for Spur Shooters Supply, ROBERT OWENS, individually, and as owner and as BATFE FFL Responsible Person for Thousand Islands Armory, CRAIG SERAFINI, individually, and as owner and as BATFE FFL Responsible Person for Upstate Guns and Ammo, LLC, NICK AFFRONTI, individually, and as BATFE FFL Responsible Person for East Side Traders LLC, EMPIRE STATE ARMS COLLECTORS ASSOCIATION, INC.,

*Plaintiffs-Appellants.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iii

PRELIMINARY STATEMENT ........................................................ 1

ISSUES PRESENTED ...................................................................... 4

STATEMENT OF THE CASE .......................................................... 4

    A.   Statutory Background ............................................................. 4

    B.   Procedural Background .......................................................... 8

STANDARD OF REVIEW ................................................................ 13

SUMMARY OF ARGUMENT ......................................................... 14

ARGUMENT ................................................................................... 16

POINT I

    PLAINTIFFS FAILED TO ESTABLISH A LIKELIHOOD OF SUCCESS ON
    THEIR CHALLENGES TO NEW YORK'S GUN SAFETY MEASURES.............. 16

    A.   Plaintiffs Are Unlikely to Succeed on Their Second
        Amendment Claims. .............................................................. 17

        1.   The safety and recordkeeping requirements do not
            implicate the Second Amendment................................. 18

        2.   The training, licensing, and background check
            requirements neither injure plaintiffs nor violate
            the Second Amendment................................................. 23

            a.   *Plaintiffs lack standing to challenge the
                training, licensing, and background check
                requirements.* ......................................................... 23

**Page**

       b.   *The training, licensing, and background check requirements are consistent with the historical tradition of firearm regulation.* ................................ 27

   B.   Plaintiffs Are Unlikely to Succeed on Their Preemption Claim. .................................................................................. 31

   C.   Plaintiffs Are Unlikely to Succeed on Their Discrimination Claim ................................................................. 36

POINT II

   PLAINTIFFS FAILED TO DEMONSTRATE IRREPARABLE HARM ABSENT AN INJUNCTION OR THAT AN INJUNCTION IS IN THE PUBLIC INTEREST ............................................................................... 38

   CONCLUSION ...................................................................... 43

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Citibank, N.A. v. Citytrust,*
  756 F.2d 273 (2d Cir. 1985) ............................................................... 39

*City of Syracuse v. Onondaga County,*
  464 F.3d 297 (2d Cir. 2006) ............................................................... 16

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) .................................................................... passim

*Dolan v. Connolly,*
  794 F.3d 290 (2d Cir. 2015) ............................................................... 38

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
  559 F.3d 110 (2d Cir. 2009) ............................................................... 38

*Freedom Holdings, Inc. v. Spitzer,*
  408 F.3d 112 (2d Cir. 2005) ............................................................... 41

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
  481 F.3d 60 (2d Cir. 2007) ........................................................... 39, 40

*Green Haven Prison Preparative Meeting of Religious Soc'y of*
  *Friends v. New York State Dep't of Corr. & Cmty.*
  *Supervision,*
  16 F.4th 67 (2d Cir. 2021) ................................................................. 13

*In re Dairy Mart Convenience Stores, Inc.,*
  411 F.3d 367 (2d Cir. 2005) ............................................................... 37

*In re Nortel Networks Corp. Sec. Litig.,*
  539 F.3d 129 (2d Cir. 2008) ......................................................... 37, 42

*Libertarian Party of Erie County v. Cuomo,*
  970 F.3d 106 (2d Cir. 2020) ............................................................... 25

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ...................................................................... 25-27

iii

**Cases**                                                              **Page(s)**

*New York SMSA Ltd. P'ship v. Town of Clarkstown*,
   612 F.3d 97 (2d Cir. 2010) ................................................................ 32

*New York State Rifle & Pistol Association v. Bruen*,
   142 S. Ct. 2111 (2022) ............................................................... passim

*New York v. United States Dep't of Homeland Sec.*,
   969 F.3d 42 (2d Cir. 2020) ................................................................ 13

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) .............................................................. 41

*Reynolds v. Quiros*,
   990 F.3d 286 (2d Cir. 2021) .............................................................. 37

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................... 24

*Teixeira v. County of Alameda*,
   873 F.3d 670 (9th Cir. 2017) ........................................................ 20-21

*Torraco v. Port Auth. of New York & New Jersey*,
   615 F.3d 129 (2d Cir. 2010) .............................................................. 32

*Tough Traveler, Ltd. v. Outbound Prods.*,
   60 F.3d 964 (2d Cir. 1995) ................................................................ 39

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
   277 F.3d 253 (2d Cir. 2002) .............................................................. 41

*We The Patriots USA, Inc. v. Hochul*,
   17 F.4th 266 (2d Cir. 2021) ............................................................... 41

*Whole Woman's Health v. Jackson*,
   142 S. Ct. 522 (2021) ........................................................................ 26

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................................ 13, 38

**Constitution**                                                       **Page(s)**

U.S. Const. amend. II .................................................... 17, 19, 27

**Federal Laws**

18 U.S.C.
    § 923 .........................................................................33-34
    § 926 .......................................................................... 34
    § 927 .......................................................................... 32

42 U.S.C.
    § 1983 ........................................................................ 37
    § 1985 ........................................................................ 38

Militia Act Ch. 33, 1 Stat. 271 (1792) ...................................... 28

Pub. L. 90-351, 82 Stat. 197 (1968) ......................................... 33

**Federal Rules and Regulations**

27 C.F.R.
    § 478.23 ...................................................................... 34
    § 478.39a .................................................................... 34
    § 478.125 .................................................................... 33

28 C.F.R.
    § 25.6 ........................................................................ 35
    § 25.11 ....................................................................35-36

Federal Rule of Appellate Procedure 8(a) ................................ 12

**State Laws**

*New York*

Ch. 27 (1782), 1 *Laws of the State of New York* 440 .............................. 28

Ch. 55 (1780), 1 *Laws of the State of New York* 237 .............................. 28

Ch. 207, 2022 N.Y. Laws ................................................. 5, 39

**State Laws**                                        **Page(s)**

*New York*

Ch. 212, 2022 N.Y. Laws .................................................................. 6, 39

Ch. 371, 2022 N.Y. Laws ................................................................ 7-8, 39

Executive Law
   § 228 ........................................................................... 7, 27, 35

General Business Law
   § 875-b ........................................................... 4, 18, 34, 40
   § 875-c ......................................................................... 4, 19
   § 875-e ......................................................................... 5, 19
   § 875-f ........................................................... 5, 10, 18, 32-33
   § 875-g ........................................................................ 5, 18, 36
   § 875-i .............................................................................. 6

Penal Law
   § 265.65 ............................................................................. 6
   § 400.00 ....................................................................... passim
   § 400.02 ....................................................................... passim
   § 400.03 ............................................................................ 27

*States (alphabetical)*

Conn. Gen. Stat. § 29-37p ................................................................ 30

430 Ill. Comp. Stat. § 65/2(a)(1) .................................................... 30

Ch. 187, 1806 N.J. Laws 536 ........................................................... 28

Wash. Rev. Code § 9.41.090(2) ..................................................... 30

**Miscellaneous Authorities**                                                    **Page(s)**

Chelsia Rose Marcius, *The Suspect Bought His Weapon Without Leaving an Impression, a Gun Store Owner Said*, N.Y. Times (May 15, 2022), https://www.nytimes.com/live/2022/05/15/nyregion/shooting-buffalo-ny/the-suspect-bought-his-weapon-without-leaving-an-impression-a-gun-store-owner-said?smid=url-share ..................... 5

Fed. Bureau of Investigation, *NICS Firearm Checks: Month/Year by State*, https://www.fbi.gov/file-repository/nics_firearm_checks_-_month_year_by_state.pdf/view ....................................... 22

Fed. Bureau of Investigation, *NICS Participation Map*, https://www.fbi.gov/file-repository/nics-participation-map.pdf/view ....................................................... 35

N.Y. Div. of Crim. Just. Servs., *Minimum Standards for New York State Concealed Carry Firearm Safety Training* (Aug. 23, 2022), https://www.criminaljustice.ny.gov/FINAL%20NYSP-DCJS%20Minimum%20Standards%20for%20Firearm%20Safety%20Training%208-23-22.pdf ................................... 7, 29

N.Y. Governor, Press Release, Governor Hochul Signs Landmark Legislative Package to Strengthen Gun Laws and Protect New Yorkers (June 6, 2022), https://www.governor.ny.gov/news/governor-hochul-signs-landmark-legislative-package-strengthen-gun-laws-and-protect-new-yorkers ............................................... 6

N.Y. Senate Sponsor's Mem. S51001 (2022) ........................................ 7-8

N.Y. State Police, Pistol Permit Recertification, https://gunsafety.ny.gov/pistol-permit-recertification ...................... 24

Order in Pending Case, *Gazzola v. Hochul*, No. 22A591 (Jan. 18, 2023) ...................................................... 12

**Miscellaneous Authorities** **Page(s)**

U.S. Centers for Disease Control and Prevention, Firearm
    Mortality by State,
    https://www.cdc.gov/nchs/pressroom/sosmap/firearm_mortali
    ty/firearm.htm......................................................................... 37

## PRELIMINARY STATEMENT

Plaintiffs, who are retail sellers of firearms, challenge a series of public safety measures regulating the sale of firearms in New York State. Most of these measures were enacted in June 2022, before this Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), while some were part of the Concealed Carry Improvement Act (CCIA) that New York enacted in July 2022 in response to *Bruen*. Plaintiffs complain, albeit with scant support, that the statutory provisions in question will put their firearm retail stores out of business. They seek to halt the implementation and enforcement of these measures by the New York State Police and Division of Criminal Justice Services, principally claiming that some of the laws violate the Second Amendment and others are preempted by federal law. The United States District Court for the Northern District of New York (Sannes, C.J.) denied plaintiffs' motion for a preliminary injunction.

This Court should affirm. As the district court held, plaintiffs are unlikely to prevail on their challenges, either because they lack standing to raise certain claims or because they are unlikely to prevail on the merits (or both). First, the safety and recordkeeping provisions plaintiffs

challenge do not implicate, let alone violate, the Second Amendment; they merely regulate the commercial sale of arms, without depriving either plaintiffs or their customers of any right to keep and bear arms. Second, plaintiffs lack standing to challenge the concealed-carry training requirement, semiautomatic rifle licensing requirement, and ammunition background check requirement imposed by the CCIA and other legislation. Plaintiffs failed to explain how any of these provisions impaired their own Second Amendment rights. In any event, these provisions pass muster under the Second Amendment because they are consistent with the Nation's historical regulation of firearms. Third, New York's safety and recordkeeping requirements and its background check procedures are not preempted by federal law. To the contrary, these provisions promote the law enforcement purposes underlying federal firearm laws. Finally, plaintiffs attempt to raise a discrimination claim based on various statements by the Governor and Attorney General; that claim is both unpreserved for this Court's review and meritless.

The district court's order should be affirmed for the additional reason that plaintiffs have failed to show irreparable harm absent a preliminary injunction. Plaintiffs waited four months after the passage

of the challenged laws—until November 2022—to file this action, and that delay alone weighs strongly against a preliminary injunction. Moreover, plaintiffs failed to show with any concrete evidence that the challenged laws will put their firearm retail stores out of business. And to the extent they complain about the costs of compliance and lost revenue, those harms are not irreparable. Plaintiffs also failed to establish a credible threat of criminal prosecution based on their choice not to comply with the safety and recordkeeping requirements imposed on firearm retailers.

Finally, a preliminary injunction would be severely disruptive now that most of the challenged laws have taken effect. It would cause confusion for firearms dealers and county-level administrators who have been adhering to training, licensing, safety, and recordkeeping requirements since last year, and would delay implementation of the background check procedures scheduled to take effect later in 2023. An injunction would also be detrimental to public safety. The public interest thus weighs against a preliminary injunction.

## ISSUES PRESENTED

1.     Did plaintiffs fail to establish a likelihood of success on their challenges to New York State's gun safety measures, either because they lack standing to raise certain claims or because the claims are meritless (or both)?

2.     Did the district court correctly apply the remaining preliminary-injunction factors, including by finding that plaintiffs had failed to demonstrate irreparable harm absent an injunction?

## STATEMENT OF THE CASE

### A.     Statutory Background

This action concerns a series of gun safety laws enacted by the New York State Legislature. First, plaintiffs challenge the following firearm safety and recordkeeping requirements imposed on retail sellers of firearms:

- General Business Law § 875-b(1), requiring firearm dealers to secure firearms in a safe or a locked area other than during business hours;

- General Business Law § 875-b(2), requiring dealers to have security alarm systems installed at their premises;

- General Business Law § 875-c, prohibiting individuals under 18 years old from entering firearm retail stores unless accompanied by a parent or guardian;

- General Business Law § 875-e(1), requiring dealers to provide training developed by State Police to employees;

- General Business Law § 875-e(3), prohibiting firearm retailers from hiring employees under 21 years old;

- General Business Law § 875-f(1), requiring dealers to maintain records of firearm purchases, sales, and inventories and to provide copies of such records to State Police semiannually;

- General Business Law § 875-f(2), requiring dealers to perform monthly inventory checks;

- General Business Law § 875-f(3), requiring dealers to provide records of firearm sales to government law enforcement agencies and manufacturers at their request; and

- General Business Law § 875-g(2), directing State Police to conduct periodic onsite inspections of every dealer and obligating dealers to provide State Police full access to their premises for such inspections.

These provisions came into effect on December 3, 2022. *See* Ch. 207, 2022 N.Y. Laws. They were enacted on June 6, 2022, in the wake of the May 14, 2022 mass shooting in which an 18-year-old gunman, who had purchased a semiautomatic rifle from a New York firearm retailer, killed ten people and injured three others in Buffalo. *See id*; *see also* Chelsia Rose Marcius, *The Suspect Bought His Weapon Without Leaving an Impression, a Gun Store Owner Said*, N.Y. Times (May 15, 2022).[1] The

---

[1] For sources available online, full URLs appear in the Table of Authorities. All URLs were last visited on March 1, 2023.

5

Legislature enacted these provisions, among others, to combat such violence by preventing unlawful gun and ammunition sales, especially to individuals with a criminal record, and to safeguard gun store inventories. *See* N.Y. Governor, Press Release, Governor Hochul Signs Landmark Legislative Package to Strengthen Gun Laws and Protect New Yorkers (June 6, 2022). A knowing violation of any of these safety and recordkeeping requirements is punishable as a class A misdemeanor. *See* General Business Law § 875-i.

Second, plaintiffs challenge Penal Law § 400.00(2), which requires a license to purchase or take possession of a semiautomatic rifle. The law provides that such a license "shall be issued" by the county-level licensing authority so long as certain statutory prerequisites are met. Penal Law § 400.00(2). This provision was also enacted on June 6, 2022. Ch. 212, 2022 N.Y. Laws. Like the safety and recordkeeping requirements imposed on firearm dealers, the licensing requirement for semiautomatic rifles was intended to combat gun violence. *See* Press Release, *supra*. Purchasing a semiautomatic rifle without a license and knowingly selling one to a purchaser without a license may lead to criminal penalties. *See* Penal Law §§ 265.65, 265.66.

6

Lastly, plaintiffs challenge several provisions of the Concealed Carry Improvement Act (CCIA), which New York enacted on July 1, 2022. *See* Ch. 371, 2022 N.Y. Laws. These include a provision codified in Penal Law § 400.00(19), which sets forth training requirements for obtaining a concealed-carry license. Previously, some counties required handgun training for a concealed-carry license, but there were no statewide standards for such training. Penal Law § 400.00(19) thus "enable[s] the State to regulate and standardize training for license applicants." N.Y. Senate Sponsor's Mem. S51001 (2022). This provision came into effect on September 1, 2022. Ch. 371, § 26, 2022 N.Y. Laws. The Division of Criminal Justice Services and State Police have issued detailed guidance for this concealed-carry training. *See* N.Y. Div. of Crim. Just. Servs., *Minimum Standards for New York State Concealed Carry Firearm Safety Training* (Aug. 23, 2022).

The challenged CCIA provisions also include those codified in Penal Law § 400.02(2), which requires background checks for ammunition sales and directs the State Police to establish a database for such sales. Similarly, plaintiffs challenge CCIA provisions codified in Executive Law § 228, which designates the State Police as a state point of contact for the

7

National Instant Criminal Background Check System (NICS) and directs the State Police to establish a statewide firearm license and records database. These provisions were intended to ensure that "[t]he State will have oversight over background checks for firearms" and ammunition sales. N.Y. Senate Sponsor's Mem. S51001 (2022). The provision designating the State Police as NICS point of contact will come into effect on July 15, 2023, while the ammunition background check requirement will come into effect after the State Police's database becomes operational. *See* Penal Law § 400.02(2); Ch. 371, § 26, 2022 N.Y. Laws.

## B.    Procedural Background

Four months after the challenged laws were enacted, on November 1, 2022, plaintiffs commenced this pre-enforcement challenge in the United States District Court for the Northern District of New York. Plaintiffs include nine individuals who sell firearms at retail stores in upstate New York. (A12-14.) They each hold both a federal firearm license (FFL) and a state license to operate as a firearms dealer. (A15-19.) The complaint names Governor Kathleen Hochul, State Police Acting Superintendent Steven Nigrelli, Commissioner of the Division of Criminal Justice Services Rossana Rosado, and Attorney General Letitia

8

James as defendants. (A19-21.) Plaintiffs assert that the laws listed above (among others) violate their rights under the Second Amendment; violate their Fifth Amendment right against self-incrimination; are preempted by federal law; are void for vagueness; and are unconstitutionally burdensome. (A122-132.) Plaintiffs seek a declaration invalidating the challenged laws, an injunction against defendants' enforcement of these laws, and damages. (A133.)

Plaintiffs moved for a temporary restraining order and a preliminary injunction to enjoin implementation and enforcement of the challenged laws. (A172-176.) Plaintiffs articulated three kinds of harms purportedly warranting injunctive relief. First, plaintiffs alleged that the laws have harmed them economically by causing them both to lose sales and to incur compliance costs. Plaintiffs alleged that the laws jeopardize their ability to stay in business, but offered little concrete information to show that they would go out of business because of the laws. (*See, e.g.*, A196-198, 215, 226, 282, 284-285, 299, 321, 323, 330.)

Second, plaintiffs alleged that the training requirement for concealed-carry licenses, the licensing requirement for the purchase of semiautomatic rifles, and the background check requirement for the

purchase of ammunition infringed their individual rights to keep and bear arms. For example, plaintiff Craig Serafini alleged that he would be unable to renew his concealed-carry license because defendants had not published a standardized training curriculum. (A226-228.) Plaintiff Christopher Martello alleged that he was "unable" to purchase semiautomatic rifles (though he did not describe any concrete plans to do so) because Livingston County, where he resides, was not offering a semiautomatic license. (A271.) And plaintiff Serafini alleged that he had not "purchased any ammunition since the new law went into effect," though he did not explain how the background check requirement prevented him from doing so. (A235.)

Third, plaintiffs alleged in their declarations that they do not intend to comply with the challenged laws—based on their belief that the laws are preempted by federal law—and therefore fear they will be criminally prosecuted unless the laws are enjoined. For example, plaintiffs Seth Gazzola and Robert Owens alleged that they will refuse to provide records of firearm sales to the State Police as required by General Business Law § 875-f. (A210, 316.)

The district court (Sannes, C.J.) denied plaintiffs' motion in a text order on December 2, 2022 (A6), which plaintiffs immediately appealed. (SA1.) The district court's written decision, issued on December 7, thoroughly addresses and disposes of each of plaintiffs' claims. The court first held that plaintiffs, as retail sellers of firearms, generally have standing to challenge the requirements imposed on firearm retailers. (SA14.) But plaintiffs had not sufficiently alleged that the training, licensing, or background check requirements infringed their individual Second Amendment rights, and therefore lacked standing to challenge those laws. (SA15-17.) The court next held that plaintiffs' alleged economic harms do not suffice to show irreparable harm. (SA17-22.)

On the merits, the court held that plaintiffs failed "to establish any connection between Defendants Hochul and James and the enforcement of the New York laws at issue." (SA24.) Accordingly, the court held, plaintiffs failed to state a claim against the Governor and Attorney General. The court next held that the challenged state laws do not conflict with, and therefore are not preempted by, federal law. (SA25-32.) The court also rejected plaintiffs' Second Amendment claims because plaintiffs had failed to establish "a Second Amendment right for an

11

individual or a business organization to engage in the commercial sale of firearms." (SA34.) Likewise, the court rejected plaintiffs' "constitutional regulatory overburden" claim, noting that plaintiffs "provided no basis for their novel theory." (SA43.) The court further noted that the Supreme Court has "explicitly refuse[d] to 'cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms.'" (SA43 (quoting *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring)).) Finally, the court rejected plaintiffs' vagueness challenge and Fifth Amendment claim. (SA34-42.)

On December 21, 2022, this Court denied plaintiffs' motion for an injunction pending appeal. The Court explained that plaintiffs had failed to seek that relief in the district court as required by Federal Rule of Appellate Procedure 8(a), and that injunctive relief pending appeal "would not be warranted" in any event. Order, Dkt. 29 (Dec. 21, 2022). The Supreme Court likewise denied plaintiffs' application for a writ of injunction. *See* Order in Pending Case, *Gazzola v. Hochul*, No. 22A591 (Jan. 18, 2023). A petition for certiorari before judgment is currently

12

pending. *See* Pet. for a Writ of Certiorari Before Judgment, *Gazzola v. Hochul*, No. 22-622 (docketed Jan. 4, 2023).[2]

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Movants must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* at 20. Where, as here, the government is a party to the suit, the "public interest" and the "balance of equities" merge into a single factor. *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020).

On appeal from an order denying injunctive relief, this Court reviews the district court's legal holdings de novo and its ultimate decision for abuse of discretion. *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021).

---

[2] Defendants' response to this petition is due on March 10, 2023.

## SUMMARY OF ARGUMENT

The district court properly denied plaintiffs' preliminary injunction motion because plaintiffs failed to demonstrate either a likelihood of success on their challenges or irreparable harm. This Court should affirm.

First, plaintiffs are unlikely to succeed on any of their challenges to New York's gun safety measures, either because plaintiffs lack standing to raise their claims or because the claims are meritless (or both). Preliminarily, while plaintiffs asserted harm to the corporations and LLCs they own, those entities do not have Second Amendment rights—a ruling that plaintiffs do not contest on appeal. Nor have plaintiffs shown that the challenged laws violate any individual's right to keep and bear arms. Although plaintiffs challenged certain safety and recordkeeping requirements imposed on firearm dealers, these measures merely regulate the "commercial sale of arms," and therefore do not implicate, let alone violate, plaintiffs' Second Amendment rights. *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008). Plaintiffs are also unlikely to succeed on a derivative claim on behalf of their customers because plaintiffs have not demonstrated that these laws will prevent

14

customers from purchasing guns in violation of their Second Amendment rights.

As for plaintiffs' remaining Second Amendment claims, plaintiffs lack standing to challenge the training requirement for concealed-carry licenses, the licensing requirement for the purchase of a semiautomatic rifle, and the background check requirement for the purchase of ammunition because they offer no evidence of any injury-in-fact arising from these laws. In any event, these laws pass muster under the Second Amendment because they are "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

Plaintiffs fare no better on their other claims. Plaintiffs are unlikely to succeed on their federal preemption claim because they point to no conflict between New York and federal law. And their discrimination claim against the Governor and Attorney General is unpreserved, and in any event lacks merit because plaintiffs do not allege any differential treatment or discriminatory animus.

Next, plaintiffs failed to demonstrate irreparable harm absent an injunction. The alleged threat of prosecution is entirely speculative. And plaintiffs have not shown that the challenged laws will force them to close

15

their businesses. Therefore, the alleged economic harms to plaintiffs' businesses from any loss of sales or costs of compliance are compensable, not irreparable.

Finally, an injunction is not in the public interest. An injunction of these gun safety measures would be severely disruptive to firearm dealers and county-level administrators, and it would needlessly put the public at risk.

## ARGUMENT

### POINT I

#### PLAINTIFFS FAILED TO ESTABLISH A LIKELIHOOD OF SUCCESS ON THEIR CHALLENGES TO NEW YORK'S GUN SAFETY MEASURES

On appeal, plaintiffs claim that the challenged gun safety laws (1) violate the Second Amendment, (2) are preempted by federal law, and (3) are motivated by discriminatory animus. Plaintiffs are not likely to succeed on any of these claims.[3]

---

[3] Plaintiffs have abandoned their vagueness challenge by failing to address it on appeal. *See City of Syracuse v. Onondaga County*, 464 F.3d 297, 308 (2d Cir. 2006).

16

**A.    Plaintiffs Are Unlikely to Succeed on Their Second Amendment Claims.**

Plaintiffs challenge two sets of laws on Second Amendment grounds. First, in their capacity as commercial firearm dealers, plaintiffs challenge certain safety and recordkeeping requirements as overly burdensome. According to plaintiffs, these requirements will cause firearm dealers to go out of business, thereby preventing their customers from being able to purchase firearms. (Br. at 28-33.) Second, in their capacity as individuals, plaintiffs challenge the training requirement for concealed-carry licenses, the licensing requirement for the purchase of semiautomatic rifles, and the background check requirement for the purchase of ammunition. (Br. at 50-57.) Plaintiffs are unlikely to succeed on the claims raised in either capacity.

Preliminarily, the district court correctly held that plaintiffs cannot assert the Second Amendment rights of the corporations and LLCs they own because the Second Amendment protects the rights of "people," not business entities. U.S. Const. amend. II. (*See* SA6 n.3, 33; *see also* A12-14.) Plaintiffs do not dispute this holding on appeal. Nor could they. The Court in *Bruen* made clear that the Second Amendment "protect[s] an *individual* right to keep and bear arms for self-defense." 142 S. Ct. at

17

2125 (emphasis added). Likewise, in *Heller*, the Court recognized that the Second Amendment refers to "an individual right" and "is exercised individually." 554 U.S. at 580-81.

For the reasons explained below, plaintiffs also failed to show that that the challenged laws violate their individual Second Amendment rights or the individual rights of their customers.

### 1. The safety and recordkeeping requirements do not implicate the Second Amendment.

Plaintiffs' challenge to the safety and recordkeeping requirements fails to state a claim because those requirements do not implicate either their own or their customers' Second Amendment rights. The challenged laws require firearm dealers to secure firearms outside business hours, General Business Law § 875-b(1); install security alarm systems, *id.* § 875-b(2); provide State Police-developed training to employees, *id.* § 875-e; perform monthly inventory checks, *id.* § 875-f(2); and provide State Police with full access to their premises during periodic onsite inspections, *id.* § 875-g(2). Additionally, the laws prohibit individuals under 18 years old from entering firearm retail stores unless

18

accompanied by a parent or guardian, *id.* § 875-c; and prohibit retailers from hiring employees under 21 years old, *id.* § 875-e(3).

Plaintiffs fail to show that the burdens of complying with these laws implicate their individual Second Amendment rights. The challenged laws merely "impos[e] conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008). Such laws do not implicate the Second Amendment, *see id.*, because the plain text of the Second Amendment addresses "the right of the people to keep and bear Arms," U.S. Const. amend. II—not the right to sell arms. Nor have plaintiffs cited any authority recognizing such a right, as the district court noted. (SA34.) Indeed, *Bruen* explained that an individual can assert a Second Amendment claim only "[w]hen the Second Amendment's plain text covers [the] individual's conduct," *i.e.*, an individual's keeping or carrying of arms. 142 S. Ct. at 2129-30. And as Justice Kavanaugh stated in his concurrence, nothing in the opinion "should be taken to cast doubt on" laws regulating the commercial sale of firearms. *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626).

The Ninth Circuit's en banc decision in *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017), is instructive. The plaintiff in that case sought to open a gun store in Alameda County, California. *Id.* at 673. To do so, he was required to obtain a conditional use permit from the county. *Id.* at 674. The county denied a permit because the proposed location for the gun store violated a local zoning ordinance, which required that gun stores "be located at least five hundred feet away from . . . schools, day care centers, liquor stores or establishments serving liquor, other gun stores, and residentially zoned districts." *Id.* at 674. The plaintiff sued, claiming that the ordinance violated his individual Second Amendment rights as well as the Second Amendment rights of his prospective customers. The Ninth Circuit rejected the prospective gun store owner's individual claim, holding that there is no "independent, freestanding right to sell firearms under the Second Amendment." *Id.* at 682; *see also id.* at 687. The Court should come to the same conclusion here.

Plaintiffs also have failed to make out a derivative claim that the safety and recordkeeping requirements they challenge violate the Second Amendment rights of plaintiffs' customers. *Teixeira* again is instructive.

20

While the Ninth Circuit in that case acknowledged that the plaintiff, "as the would-be operator of a gun store," had "derivative standing to assert the subsidiary right to acquire arms on behalf of his potential customers," the complaint lacked any plausible allegation that such customers could not purchase firearms elsewhere. *Teixeira*, 873 F.3d at 678-79. To the contrary, the record reflected that "Alameda County residents may freely purchase firearms within the County." *Id.* at 679. And the court made clear that "gun buyers have no right to have a gun store in a particular location, at least as long as their access is not meaningfully constrained." *Id.* at 680.

Here too, plaintiffs have not shown that their customers' access to firearms has been meaningfully constrained in any way. Plaintiffs made no attempt whatsoever to demonstrate the impact of these laws on the public's ability to procure firearms in their geographic region or in New York more generally. To the contrary, public records reflect that firearm retailers continue to sell guns in New York State. Firearm dealers have initiated over 30,000 federal background checks each month since September 2022, including 31,966 in January 2023—an *increase* from the 29,536 checks initiated in January 2022. *See Fed. Bureau of*

21

*Investigation, NICS Firearm Checks: Month/Year by State*. Thus, New York residents remain free to purchase arms in the State, subject to reasonable "conditions and qualifications," *Heller*, 554 U.S. at 627, and they are doing so in significant numbers.

Moreover, while plaintiffs suggest that the laws will cause retailers to close their businesses (Br. at 32), the record does not bear that out. Despite plaintiffs' predictions that they would be forced to close their businesses in December 2022 when the safety and recordkeeping requirements came into effect (*see, e.g.*, A316, 323), plaintiffs have not asserted that any of their businesses have in fact closed.[4] And as the district court found, plaintiffs failed to explain how the laws will affect their businesses' profitability, let alone their viability; even the most detailed of plaintiffs' declarations, that of Nadine Gazzola, "fall[s] short of providing a concrete showing that the viability of her business is threatened." (SA21 n.18.) Plaintiffs' conclusory allegations of impending gun store closures do not support preliminary injunctive relief. The district court thus correctly declined to enjoin the implementation and

---

[4] Indeed, plaintiffs state that Nadine Gazzola has applied for renewal of her FFL for her store in Ghent, New York. (Br. at 14.)

enforcement of the safety and recordkeeping requirements imposed on firearm retailers.

### 2. The training, licensing, and background check requirements neither injure plaintiffs nor violate the Second Amendment.

Plaintiffs also claim that three laws violate their Second Amendment rights as individuals: the concealed-carry training requirement, Penal Law § 400.00(1), (19); the semiautomatic rifle licensing requirement, *id.* § 400.00(2)-(3), (6)-(9), (14); and the background check requirement for ammunition sales, *id.* § 400.02(2). (Br. at 50-57.) Plaintiffs are unlikely to succeed on these claims both because plaintiffs lack standing to challenge these laws and because the laws are consistent with the Nation's historical tradition of firearm regulation.

#### a. *Plaintiffs lack standing to challenge the training, licensing, and background check requirements.*

The district court correctly held that plaintiffs lack standing to challenge each of these three laws. (SA15-17.) The "irreducible constitutional minimum" of standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

First, plaintiffs have not shown any injury-in-fact arising from the concealed-carry training requirement. All the individual plaintiffs who submitted declarations in support of the preliminary injunction motion already possess concealed-carry licenses. (A186, 207, 223, 247, 270, 294, 312, 329.) And the law does not require them to undergo training in order to maintain their licenses. The training requirement applies only to an individual applying for a license, and to an individual residing in one of the downstate counties—New York City, Westchester, Nassau, and Suffolk Counties—where licenses expire and must be renewed every three years. *See* Penal Law § 400.00(1), (10), (19). Concealed-carry licenses issued to plaintiffs and other similarly situated residents, by contrast, "shall be in force and effect until revoked" and need only be recertified every three years. *Id.* § 400.00(10)(a), (d). Unlike renewal, recertification involves simply filling out an online form. *See* <u>N.Y. State Police, Pistol Permit Recertification</u>. Because plaintiffs are not subject to the concealed-carry training requirement, they cannot show any "actual

24

or imminent" injury arising from that requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted).

Second, plaintiffs have not shown that they will suffer any injury-in-fact arising from the semiautomatic rifle licensing requirement. The requirement applies to the purchase or transfer of a semiautomatic rifle (but not to the possession of one previously obtained). Penal Law § 400.00(2). Plaintiffs do not assert any injury to their ability to sell semiautomatic rifles—nor could they, as established above, because their businesses do not have Second Amendment rights, and they as individuals do not have Second Amendment rights to sell to unlicensed purchasers. Although plaintiffs assert injury in the form of their own inability to purchase a semiautomatic rifle, only one plaintiff—Martello—has stated that he desires to purchase one. (A271.) But he did not describe any "concrete plans" to purchase a semiautomatic rifle or indicate when he intends to do so. *Lujan*, 504 U.S. at 564; *see also Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 121-22 (2d Cir. 2020), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111. Thus, Martello failed to show any actual or imminent injury.

Nor has Martello shown that any obstacle he may face would be traceable to defendants. Instead, he attributed his hypothetical inability to obtain a semiautomatic rifle to nonparty Livingston County, which allegedly "is not offering a semi-automatic license." (A271.) This is consistent with the temporary delays in county-level implementation that plaintiffs' counsel described during the hearing on the preliminary injunction motion. (ECF 43, at 15-16.) As the district court found, any hypothetical injury arising from the "non-defendant county's failure to issue semi-automatic rifle licenses" (SA16) would be traceable to "the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation omitted). An injunction in these circumstances would fall afoul of the principle that "no court may lawfully enjoin the world at large, or purport to enjoin challenged laws themselves." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) (citations and quotation marks omitted).

Third, plaintiffs have not shown any injury-in-fact arising from the ammunition background check requirement. Currently, sellers of ammunition must maintain records of ammunition sales including "the date, name, age, occupation and residence of any person from whom

ammunition is received or to whom ammunition is delivered." Penal Law
§ 400.03(2). Once the State's firearm license and records database
becomes operational, New York law will require background checks for
ammunition sales, similar to the background checks already conducted
for firearm sales. *See* Penal Law § 400.02(2); Executive Law § 228(7). But
plaintiffs have not shown that they are likely to face any personal
difficulty obtaining ammunition. In the absence of any "concrete and
particularized" allegation of harm, plaintiffs lack standing to challenge
the background check requirement. *Lujan*, 504 U.S. at 560.

> b.  *The training, licensing, and background check
>     requirements are consistent with the historical
>     tradition of firearm regulation.*

Plaintiffs' claims lack merit in any event. All three provisions are
"consistent with this Nation's historical tradition of firearm regulation,"
and therefore easily pass muster under the Second Amendment. *Bruen*,
142 S. Ct. at 2126.

First, training requirements are explicitly contemplated by the
Second Amendment's prefatory clause, which states that "[a] *well
regulated* Militia [is] necessary to the security of a free State." U.S. Const.
amend. II (emphasis added). This reference implies "the imposition of

27

proper discipline and training." *Heller*, 554 U.S. at 597. The Supreme Court in *Heller* further acknowledged that

> to bear arms implies something more than the mere keeping; it implies the learning to handle and use them in a way that makes those who keep them ready for their efficient use; in other words, it implies the right to meet for voluntary discipline in arms, observing in doing so the laws of public order.

*Heller*, 554 U.S. at 617-18 (2008) (quoting Thomas Cooley, *General Principles of Constitutional Law* 271 (1880)). And from the very beginning of American history, training in the use of arms was required as part of a citizen's mandatory duty to serve in the local militia. *See, e.g.*, Ch. 55 (1780), 1 *Laws of the State of New York* 237 (A455-466); Militia Act, Ch. 33, 1 Stat. 271, 273 (1792) (A469); Ch. 27 (1782), 1 *Laws of the State of New York* 440 (A471-487); Ch. 187, 1806 N.J. Laws 536, 565 (A518). New York's training requirement for concealed-carry licenses is consistent with this historical tradition.

Moreover, plaintiffs' claim that defendants have effectively prevented the issuance or renewal of concealed-carry licenses by failing to implement the statutory training requirement (*see, e.g.*, Br. at 54-55) lacks any factual basis. The statute itself lists the minimum requirements for training courses, including the eleven topics that must

be covered. Penal Law § 400.00(19). The Division of Criminal Justice Services and State Police issued detailed guidance on these minimum standards. N.Y. Div. of Crim. Just. Servs., *Minimum Standards for New York State Concealed Carry Firearm Safety Training* (Aug. 23, 2022). And plaintiffs point to no evidence showing that counties, which are responsible for issuing and renewing concealed-carry licenses, *see* Penal Law § 400.00(3)-(6), have been unable to apply these standards. Thus, plaintiffs are unlikely to prevail on the merits of their challenge to the concealed-carry training requirement.

Second, plaintiffs' challenge to the licensing requirement for semiautomatic weapons also lacks merit. Preliminarily, this licensing requirement is a "presumptively lawful regulatory measure[]" because it concerns only "the commercial sale of arms." *Heller*, 554 U.S. at 627 & n.26. New York law requires a license for the *purchase or transfer*, not the possession, of a semiautomatic rifle. Penal Law § 400.00(2). This requirement does not prevent individuals 21 years or older from keeping and bearing semiautomatic rifles, except in certain circumstances specified by the statute. And plaintiffs have not demonstrated that the impact of this licensing requirement on their ability to obtain a

semiautomatic rifle is so severe as to overcome the presumption of constitutionality that attaches to regulations of firearm sales.

In any event, the licensing requirement is consistent with the common "shall issue" licensing schemes that the *Bruen* Court took pains to emphasize were not called into question by its decision. Under Penal Law § 400.00(2), an applicant "shall be issued" a license "to purchase or take possession of" a semiautomatic rifle so long as the applicant satisfies certain well-defined statutory prerequisites. Plaintiffs do not challenge those prerequisites. Instead, they argue that the licensing requirement itself is "unprecedented." (Br. at 51.) They are wrong. While this Court in *Bruen* struck down New York's then-existing "proper-cause" requirement for a concealed-carry license, it also emphasized that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which a general desire for self-defense is sufficient to obtain a permit." 142 S. Ct. at 2138 n.9 (quotation and alteration marks omitted). Several such States require a license to purchase semiautomatic rifles. *See* Conn. Gen. Stat. § 29-37p et seq.; 430 Ill. Comp. Stat. § 65/2(a)(1); Wash. Rev. Code § 9.41.090(2). Plaintiffs have failed to explain why a licensing requirement to purchase

30

a semiautomatic rifle would offend the Second Amendment when a licensing requirement to carry a handgun in public does not.

Third, plaintiffs' challenge to the ammunition background check requirement fails for the same reasons. The requirement applies only to the purchase of ammunition, Penal Law § 400.02(2), and therefore is "presumptively lawful." *Heller*, 554 U.S. at 627 n.26. Moreover, *Bruen* approved of background checks for concealed-carry licenses. 142 S. Ct. at 2138 n.9; *see also id.* at 2162 (Kavanaugh, J., concurring). There is no reason why ammunition must be treated differently from firearms in this regard.

Plaintiffs therefore have not shown a likelihood of success on the merits of any of their Second Amendment claims.

## B.  Plaintiffs Are Unlikely to Succeed on Their Preemption Claim.

Plaintiffs' claim that federal law preempts state laws governing the sale of firearms—including several safety and recordkeeping requirements and certain background check procedures (Br. at 33-44)—is also meritless. There are three forms of preemption: "(1) express preemption, where Congress has expressly preempted local law; (2) field preemption,

where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (citation and quotation marks omitted).

Plaintiffs point to no federal law expressly preempting state laws regulating firearm sales. Nor have plaintiffs shown that federal law occupies the entire field of firearm sales, leaving no room for state law. To the contrary, Congress has expressly disclaimed any intent to do so in 18 U.S.C. § 927. As this Court has noted, this provision "explicitly cautions against finding that Congress intended [federal firearm laws] to operate at the exclusion of state gun laws." *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010).

Plaintiffs also have failed to show any conflict between federal law and any of the state laws they challenge. The state law provisions requiring firearm dealers to keep records and reconcile inventories, *see* General Business Law § 875-f(1), (2), do not make it impossible for

plaintiffs to satisfy similar obligations imposed by federal law, *see* 18 U.S.C. § 923(g); 27 C.F.R. § 478.125(e). (*See* Br. at 42-44.) Nor do plaintiffs' state law obligations impair any federal objectives. To the contrary, the federal legislation adding 18 U.S.C. § 923(g) was intended "[t]o assist State and local governments in reducing the incidence of crime [and] to increase the effectiveness, fairness, and coordination of law enforcement and criminal justice systems at all levels of government." *See* Pub. L. 90-351, 82 Stat. 197, 197 (1968). New York's recordkeeping laws are fully consistent with that federal policy.

Plaintiffs likewise fail to show any conflict between federal and state laws governing access to dealers' records. (Br. at 43-44.) General Business Law § 875-f requires dealers to provide copies of state-mandated records to the State Police semiannually, and to provide records of firearm sales to government law enforcement agencies and manufacturers at their request. These provisions complement and do not conflict with the federal statute and regulation governing the federal

government's access to similar information. *See* 18 U.S.C. § 923(g)(1)(A)-(B); 27 C.F.R. § 478.23.[5]

Plaintiffs' challenge to General Business Law § 875-b(1), which requires dealers to "implement a security plan for securing firearms, rifles and shotguns, including firearms, rifles and shotguns in shipment" (*see* Br. at 36), also fails. This security plan must satisfy two requirements: all firearms "shall be secured, other than during business hours, in a locked fireproof safe or vault on the dealer's business premises or in a secured and locked area on the dealer's business premises," and "ammunition shall be stored separately from firearms, rifles and shotguns and out of reach of customers." General Business Law § 875-b(1). These safety plan requirements do not regulate the same conduct as (let alone conflict with) the federal laws plaintiffs cite, 18 U.S.C. § 923(g)(6) and 27 C.F.R. § 478.39a. Those federal laws merely require firearm dealers to report the theft or loss of a firearm.

---

[5] Nor do these recordkeeping requirements conflict with 18 U.S.C. § 926, as plaintiffs argued below (*see* SA29-30); that statute, in relevant part, merely prohibits the U.S. Attorney General from promulgating rules requiring FFL holders to turn over federal records to federal, state, or local authorities.

Finally, plaintiffs fail to show that Executive Law § 228 and Penal Law § 400.02(2) would result in misuse of the National Instant Criminal Background Check System (NICS). (*See* Br. at 37, 44-48.) Federal regulations allow NICS background checks "only in connection with a proposed firearm transfer," 28 C.F.R. § 25.6(a), and define "[m]isuse or unauthorized access" as including "purposefully using the system to perform a check for unauthorized purposes," 28 C.F.R. § 25.11(b). Neither of the state laws petitioner cites would lead to violations of these federal regulations. Executive Law § 228 merely designates the State Police as a state point of contact for NICS. Federal law contemplates states serving as partners in conducting background checks, *see, e.g.*, 28 C.F.R. § 25.6(d), and at least 13 other states have done so, *see* Fed. Bureau of Investigation, *NICS Participation Map*. Indeed, being a "state point of contact" means only that state authorities (rather than the FBI) conduct background checks on firearm transfers. Penal Law § 400.02(2), meanwhile, merely directs the State Police to establish a database for ammunition sales. Thus, under these state laws, dealers will be able to contact the State Police to conduct background checks utilizing both NICS and state databases. *See* Executive Law § 228(4). This procedure

does not constitute a misuse of or unauthorized access to NICS as defined by 28 C.F.R. § 25.11(b). The district court thus correctly held that New York's background check procedures and its safety and recordkeeping requirements for firearm dealers are not preempted.[6]

## C. Plaintiffs Are Unlikely to Succeed on Their Discrimination Claim.

Finally, plaintiffs' discrimination claim is both unpreserved and meritless. Plaintiffs purport to state a discrimination claim based on various statements by the Governor and Attorney General cited in their complaint, but they did not seek preliminary injunctive relief on the ground that defendants' alleged discrimination "is an on-going constitutional violation." (Br. at 17.) Nor did the district court address that claim. (*See* SA8-9.) Plaintiffs thus failed to raise this argument below

---

[6] Relatedly, the district court also correctly rejected plaintiffs' Fifth Amendment claim. Plaintiffs argue that they cannot comply with state law without violating federal law. Thus, according to plaintiffs, they will incriminate themselves by certifying their compliance with state law under General Business Law § 875-g(1)(b). (Br. at 48-49.) This claim is meritless because, as explained above, there is no conflict between state and federal law.

and cannot assert it for the first time on appeal. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008).

In any event, the claim lacks merit for two reasons. First, as the district court held (SA24), plaintiffs alleged no connection between the Governor and Attorney General and the enforcement of the challenged laws. Any claims against these defendants are unlikely to succeed for that reason alone. *See In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005). Second, plaintiffs fail to make out an equal protection violation under 42 U.S.C. § 1983. Plaintiffs have not shown that they were treated differently from similarly situated individuals "as a result of intentional or purposeful discrimination." *Reynolds v. Quiros*, 990 F.3d 286, 300 (2d Cir. 2021) (citation omitted). Rather, plaintiffs merely point to statements by defendants emphasizing the need for gun safety laws in light of the May 14, 2022 mass shooting in Buffalo and the Supreme Court's decision in *Bruen*. (Br. at 18-24.) Concern for gun violence, which took the lives of 1,052 New Yorkers in 2020, *see* U.S. Centers for Disease Control and Prevention, Firearm Mortality by State, does not reflect any discriminatory animus. Nor are firearm dealers a

protected class for equal protection purposes. Thus, plaintiffs are unlikely to succeed on the merits of their discrimination claim.

To the extent plaintiffs attempt to make out a claim under 42 U.S.C. § 1985(3), that statute provides a cause of action "for the recovery of damages" based on a conspiracy to deprive individuals of their civil rights. It is not a ground for injunctive relief. In any event, plaintiffs failed to show that defendants conspired to deprive plaintiffs of their civil rights and that such conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus," as they must to make out a claim under § 1985(3). *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (citation omitted).

## POINT II

### PLAINTIFFS FAILED TO DEMONSTRATE IRREPARABLE HARM ABSENT AN INJUNCTION OR THAT AN INJUNCTION IS IN THE PUBLIC INTEREST

As the district court correctly held, plaintiffs failed to "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir.

38

2009) (citation and quotation marks omitted). To satisfy this requirement, a plaintiff "must demonstrate that absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (per curiam) (citation and quotation marks omitted).

Plaintiffs have not satisfied their burden to show irreparable harm. As an initial matter, plaintiffs' delay in filing this action and seeking relief weighs strongly against a preliminary injunction. *See, e.g.*, *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). This Court has held that an unexplained delay of as little as ten weeks defeats a showing of irreparable harm. *See, e.g.*, *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985). Here, the challenged laws were enacted in June and July 2022. *See* Ch. 207, 2022 N.Y. Laws (enacted June 6, 2022); Ch. 212, 2022 N.Y. Laws (same); Ch. 371, 2022 N.Y. Laws (enacted July 1, 2022). Yet plaintiffs waited until November 2022 to file this suit, and offer no explanation for their delay. Plaintiffs' "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for

preliminary relief and suggests that there is, in fact, no irreparable injury." *Citibank, N.A.*, 756 F.2d at 277 (citation and quotation marks omitted).

Even absent delay, plaintiffs have failed to make the required showing of irreparable harm. First, plaintiffs' assertion that they face a credible threat of criminal prosecution absent an injunction (Br. at 11-12) is speculative. According to plaintiffs, they are subject to prosecution because they do not intend to comply with the challenged laws. For example, plaintiffs state in their declarations that they refuse to install security alarm systems in compliance with General Business Law § 875-b(2) (*see, e.g.*, A289) and refuse to provide records of firearm sales to the State Police (*see, e.g.*, A210, 316). Yet nothing in the record suggests that plaintiffs are under any actual or imminent threat of prosecution for violating these laws. *See Grand River Enter. Six Nations*, 481 F.3d at 66. Otherwise, the harm that plaintiffs assert because they either must comply with allegedly unconstitutional state laws or face prosecution is not independent of the merits of their claims. And because plaintiffs have failed to demonstrate a likelihood of success on their constitutional claims, they cannot establish irreparable harm "simply by

alleging an impairment of their [constitutional] right[s]." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021).

Second, as the district court held (SA19-22), plaintiffs cannot show irreparable harm based on compliance costs and lost sales. "[O]rdinary compliance costs are typically insufficient to constitute irreparable harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005). Likewise, lost sales are measurable monetary damages that do not amount to irreparable harm. *See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 277 F.3d 253, 260 (2d Cir. 2002). And while a business's closure or "loss of reputation, good will, and business opportunities" may constitute irreparable harm, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004), plaintiffs fail to substantiate in any concrete way their claim that they will suffer such injuries absent an injunction. (*See* SA21 n.18; *supra* p. 22.)

On appeal, Nadine Gazzola presses a new argument for irreparable harm. (Br. at 13-15.) She asserts that as part of her application to renew her business's FFL, she conscientiously chose not to certify compliance with state law governing the sale of firearms. (*See* App. A to Pls.' Br.) This choice purportedly places her FFL at risk. But Gazzola did not raise

41

this argument below and cannot make it for the first time on appeal. *See In re Nortel*, 539 F.3d at 132. And even if it were preserved, it would not suffice to show irreparable harm. Like the threat of prosecution, the possibility that Gazzola's FFL will not be renewed arises from her choice not to comply with valid state laws.

Finally, the public interest weighs against a preliminary injunction. Now that nearly all of these laws are in effect, an injunction would be severely disruptive. It would cause confusion for county-level administrators and dealers who have been adhering to the training and licensing requirements since September 2022. It would halt the enforcement of the safety and recordkeeping requirements imposed on firearm dealers since December 2022. And it would delay the State's implementation of background check procedures, scheduled to come into effect starting in July 2023.

Moreover, a preliminary injunction would put the public at risk. An injunction would allow firearm retailers to ignore the security measures that were designed to protect against the theft of firearms. An injunction would also end the licensing requirement for semiautomatic rifles which helps prevent the harmful use of these lethal weapons. Likewise, law

42

enforcement efforts to combat gun crime would suffer without state databases to track the sale of firearms and ammunition. Thus, the Court should affirm the denial of plaintiffs' preliminary injunction motion and allow the State's implementation and enforcement of the challenged laws to continue.

## CONCLUSION

The Court should affirm the district court's order denying a preliminary injunction.

Dated:  Albany, New York
         March 1, 2023

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Defendants

By:  /s/ Beezly J. Kiernan
BEEZLY J. KIERNAN
Assistant Solicitor General

The Capitol
Albany, New York 12224
(518) 776-2023

BARBARA D. UNDERWOOD
  *Solicitor General*
JEFFREY W. LANG
  *Deputy Solicitor General*
BEEZLY J. KIERNAN
  *Assistant Solicitor General*
     *of Counsel*

43

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Beezly J. Kiernan, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains **8,137** words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

*/s/  Beezly J. Kiernan*