UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 22-3068 _____ Caption [use short title] _____

Motion for: EMERGENCY STAY on expedited motion schedule

_____

_____

Set forth below precise, complete statement of relief sought:

EMERGENCY STAY on expedited motion schedule:

1. STAY of NYSP take-over of FFL direct interface to FBI-NICS

for firearms background checks a/o 09/13/2023;

2.  STAY of NYSP launch of new ammunition background

check system; and,

3.  STAY of NYSP "Terrorism" unit investigation of FFLs

GAZZOLA, et al. v. HOCHUL, et al.

MOVING PARTY: Plaintiff-Appellants                     OPPOSING PARTY: Defendant-Appellees

☑ Plaintiff          ☐ Defendant

☑ Appellant/Petitioner    ☐ Appellee/Respondent

MOVING ATTORNEY: Paloma A. Capanna          OPPOSING ATTORNEY: Beezly Kiernan/NYS-AG

[name of attorney, with firm, address, phone number and e-mail]

106-Professional Park Drive, Beaufort, NC 28516     Office of NY Attorney General

(315) 586-2929                                     The Capitol, Albany, NY 12224

pcapanna@yahoo.com                                 (518) 776-2023; beezly.kiernan@ag.ny.gov

Court- Judge/ Agency appealed from: NDNY, Hon. Brenda K. Sannes

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):

☑ Yes    ☐ No (explain): _____

_____

Opposing counsel's position on motion:

☐ Unopposed  ☐ Opposed  ☑ Don't Know

Does opposing counsel intend to file a response:

☐ Yes    ☐ No    ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?          ☑ Yes  ☐ No

Has this relief been previously sought in this court?  ☑ Yes  ☐ No

Requested return date and explanation of emergency: PENDING related request before Judges Lee, Jacobs, and Lynch, fully briefed and submitted March 20, 2023.  Defendants Hochul and Nigrelli abruptly launched offensive against Plaintiff(s)/FFLs, which could result in immediate arrest(s).  Said defendants also senr written notice of intent to up-end FBI-NICS f/a background check system a/o 09/13/2023.

Is oral argument on motion requested?          ☐ Yes   ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?          ☐ Yes  ☐ No If yes, enter date: Oral arguments occurred March 20, 2023.

Signature of Moving Attorney:

Paloma A. Capanna _____ Date: August 29, 2023   Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

# 22-3068-cv

## United States Court of Appeals

*for the*

## Second Circuit

NADINE GAZZOLA, individually, and as coowner, President, and as BATFE Federal Firearms Licensee Responsible Person for Zero Tolerance Manufacturing, Inc., SETH GAZZOLA, individually, and as coowner, Vice President, and as BATFE FFL Responsible Person for Zero Tolerance Manufacturing, Inc., JOHN A. HANUSIK, individually, and as owner and as BATFE FFL Responsible Person for d/b/a AGA Sales, JIM INGERICK, individually, and as owner and as BATFE FFL Resonsible Person for Ingerick's LLC, d/b/a Avon Gun & Hunting Supply, CHRISTOPHER MARTELLO, individually, and as owner and as BATFE FFL Responsible Person for Performance Paintball, Inc. d/b/a Ikkin Arms, MICHAEL MASTROGIOVANNI, individually, and as owner as as BATFE FFL Responsible Person for Spur Shooters Supply, ROBERT OWENS, individually, and as owner and as BATFE FFL Responsible Person for Thousand Islands Armory, CRAIG SERAFINI, individually, and as owner and as BATFE FFL Responsible Person for Upstate Guns and Ammo, LLC, NICK AFFRONTI, individually, and as BATFE FFL Responsible Person for East Side Traders LLC, EMPIRE STATE ARMS COLLECTORS ASSOCIATION, INC.,

*Plaintiffs-Appellants,*

– v. –

KATHLEEN HOCHUL, in her Official Capacity as Governor of the State of New York, STEVEN A. NIGRELLI, in his Official Capacity as the Acting Superintendent of the New York State Police, ROSSANA ROSADO, in her Official Capacity as the Commissioner of the Department of Criminal Justice Services of the New York State Police, LETICIA JAMES, in her Official Capacity as the Attorney General of the State of New York,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

## EMERGENCY MOTION

---

PALOMA A. CAPANNA
*Attorney for Plaintiffs-Appellants*
106-B Professional Park Drive
Beaufort, North Carolina 25816
(315) 584-2929

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

_____

**Nadine Gazzola**, individually, and as co-owner,
President, and as BATFE Federal Firearms Licensee
Responsible Person for **Zero Tolerance
Manufacturing, Inc.**; *et al.*

> *Plaintiffs-Appellants*

> *v.*

**KATHLEEN HOCHUL**, in her Official Capacity as
Governor of the State of New York; *et al.*

> *Defendants-Appellees.*

_____

**DECLARATION OF PALOMA A. CAPANNA,
ATTORNEY FOR THE PLAINTIFFS-APPELLANTS**

**The Emergency Nature of the Motion.  A Request for a Stay Prior to
Wednesday, September 13, 2023.  A Description of the Risk, Otherwise.**

1. Defendants NYS Gov. Hochul and NYSP Acting Superintendent Nigrelli abruptly announced their intention to take over <u>100%</u> of the firearms background checks in New York and to concurrently launch a new ammunition background check system.  Their announcement came in an undated notice postmarked August 17, 2023.  The declared date for the launch is Wednesday, September 13, 2023, necessitating this motion for an emergency stay.  The Hochul-Nigrelli offensive exceeds even the limits of the 2022 statutory authority they jammed through the legislature, which laws are challenged via this case and which laws are already pending an appeal for a preliminary injunction since oral arguments on March 20, 2023.

2. *In addition*, the defendants quietly, and without warning, dispatched various NYS Police "Terrorism" unit investigators against federally-licensed dealers in firearms, including Albany-area plaintiff Craig Serafini. It was a coordinated operation of compliance inspections in a manner designed to elicit incriminating responses from dealers, including Mr. Serafini (plaintiff), Mr. Sehlmeyer (herein, supporting witness), and others. The "Terrorism" unit operation gathered information sufficient to start arresting dealers, including at least one of the plaintiffs (Mr. Serafini), along with other dealers similarly situated (such as Mr. Sehlmeyer). This flexing of power under the 2022 laws by Hochul and Nigrelli is precisely why there is a pending challenge on appeal for a preliminary injunction to stay these laws while plaintiffs proceed with decorum to a decision on the merits.

3. Most extraordinary, I must alert the Second Circuit that the offensive launched by Hochul and Nigrelli, because it exceeds the authority conferred through the challenged statutes, must also be used to supplement the submitted request to ensure any relevant stay granted plaintiffs through preliminary injunction also includes this illegal behavior.

4. These three items – (1.) background check system, (2.) ammunition background check, and (3.) dealer inspections – is now, as an urgent matter, put before the court through this emergency motion, requesting rulings prior to Wednesday, September 13, 2023.

5. There is significant risk that, in the absence of an emergency stay pending issuance of the preliminary injunction ruling by the Panel, one or more dealers in firearms, including plaintiff Craig Serafini, will be arrested on misdemeanor A criminal charges *and* that defendants will launch a monster background check system against <u>all</u> firearms and ammunition transactions of NY state citizens seeking to exercise their fundamental rights under the Second Amendment to the U.S. Constitution. The statistical probability is that this

grotesque and uncertified system will either fail to work, be abused to shut down all transactions under the guise of 30-day "delays," and/or conglomerate private transactional and personal information of state citizens into the first gun owners' registry in the history of this country.

6. We urge Your Honor(s) to laser focus on the illegal and unconstitutional breadth of the three topics of this emergency motion, the admissible written documentation and party and witness affidavits in support, and the surprisingly simply statutory arguments in favor of relief. Everyone, myself included, is prepared to get into the courtroom for oral arguments or live testimony, if requested by Your Honor(s). There is likely no more pressing civil case before this court this week, in what should otherwise be a time-honored bar tradition of stealing away in these last wistfully-lazy summer days, even as we tell the kiddos it's time to start going earlier to sleep to start getting ready for school. The timing of the defendants is intentional. They thought no one would be looking and that no judges would be around. I ask this court to prove me right when I say that when civil rights are in jeopardy the judges of the Thurgood Marshall Courthouse take no vacation.

7. What of these arguments is already pending I do not repeat herein. Understand me when I say that the offensive launched by Hochul and Nigrelli *exceeds* what 2022 statutory authority they granted themselves to, at best, start only a limited background check of handgun sales *only* by NYS-licensed dealers *only – not* a 100% take-over from FBI-NICS of <u>all</u> firearms background checks and not a dislocation of <u>all</u> NY-based, federally-licensed dealers in firearms from the FBI-NICS system and the ATF. These actions are illegal, even under the 2022 state laws and are challenged.

8. The FBI is relying, incorrectly, upon the Hochul-Nigrelli letter. The FBI sent e-mails on August 23, 2023 and August 25, 2023 to FFLs in New York, such as plaintiff Nadine Gazzola, stating the FBI will disconnect federally-licensed dealers from the NICS system the same day, Wednesday, September 13, 2023. The firearms industry was created by the federal Gun Control Act of 1968. The Brady Act of 1993, passed after five years of intense public debate and amendment, created the NICS background check system, which then underwent another five years of development, overseen by Congress. FBI-NICS with ATF dealer interface has been operational more than 25 years – all as detailed in our pending submission. The NYS Police have had no active role in any of this.

9. Note, also, the NYSP Acting Superintendent has not certified, in accordance with their 2022 laws, the operational status of the ammunition background check. The Hochul-Nigrelli notification letter indicates the system will launch on September 13, 2023. It does not say that the ammunition background check system is operational. The ammunition background check is also contrary to law, as well as previously argued flatly unconstitutional and without legal defense being made by the state. There is no historic precedence or analogue for an ammunition background check system, and this is pending, as well.

10. *Gazzola v. Hochul* is the only case to challenge the state laws at issue in this emergency motion. New York is the only state in the country to enact provisions housed in NY General Business Law § 875, which is the primary statute challenged in this case.

11. The plaintiffs request not only an emergency stay, they request an expedited motion schedule. FRAP 27(a)(3)(A).[1]

---

[1] I apologize, *en avance*, for using something of a hybrid form in this Declaration, as well as that of plaintiffs Nadine Gazzola and Craig Serafini and witness Richard Sehlmeyer. Each of us uses

**Litigation Background Overview**

12. A Joint Appendix is on file with the Second Circuit, along with a Brief [68], a Reply [85], and audio recording of oral arguments of March 20, 2023.

13. Briefly:

    a. This case was commenced November 1, 2022 through the filing of a Complaint in the Northern District Court. An emergency motion for TRO/PI was filed November 8, 2022. The motion was denied, in full, without testimony, on December 2, 2022 via text order.

    b. On December 12, 2022, an appeal with emergency motion was filed to the Second Circuit. [12, 39] It was denied on December 21, 2022 by Judges Sack, Wesley, and Bianco, but with judicial direction for an expedited briefing schedule for the appeal. [29][2]

    c. On January, 2023, an appeal with emergency motion for the TRO was filed to the U.S. Supreme Court. Reply submitted January 12, 2023. It was denied on January 18, 2023. [Case 22A591]

    d. On January 3, 2023, an appeal under SCOTUS Rule 11 in the form of a Petition for Writ of Certiorari Before Judgment for the PI was filed. Reply, after three NYS adjournments, was submitted April 3, 2023. This, too, was denied, date April 24, 2023. [Case 22-622]

---

discussion of federal and state law because it is how our industry functions. Literally, we all routinely look at the black letter of laws, guidance documents, rulings, and decisions, together, over the counter, at conferences, and in consultant and attorney offices. Time pressure for submission made this the best form for our group.

[2] Note is made that the case is now stayed below, by order of the District Court Judge.

14. This case, along with four others, was brought together for oral arguments by the Second Circuit. One of the cases heard in tandem was the *Antonyuk II v. Nigrelli* case. Those plaintiffs also filed an emergency motion to SCOTUS, a week or so ahead of ours. [22A557] Their motion, too, was denied, however, Justices Alito and Thomas penned a dissent, including this guidance, stating:

> "I understand the Court's denial today to reflect respect for the Second Circuit's procedures in managing its own docket, rather than expressing any view on the merits of the case. Applicants should not be deterred by today's order from again seeking relief if the Second Circuit does not, within a reasonable time, provide an explanation for its stay order or expedite consideration of the appeal."

15. All of the attorneys of record in the five cases already on appeal, plus additional cases in District Court, have demonstrated a diplomatic professionalism as we, our clients, and the broader public, await the Second Circuit decisions.

16. Defendants Hochul and Nigrelli shattered that respectful calm so many of us have actively worked to build in these months.

17. Sadly, as I predicted in every paper submitted and oral argument held, the plaintiff FFL dealers and pawnbroker in firearms in this case were always going to be the most vulnerable target for bad actions by the defendants. The woman and the men of *Gazzola v. Hochul* operate their small businesses out of physical business premises with regular hours, open to the public or otherwise through regularly-scheduled appointments, and the new laws made them subject to a right of entry by the NYSP to conduct the new compliance audits that treat federally-licensed dealers like criminals, as opposed to using the administrative processes sanctioned by Congress and carried out by the FBI and the ATF with these FFLs.

18. As I have stated:

> "The Plaintiffs are sitting ducks as of Monday, December 5, 2022.[3]
> If they turn the key, turn on the lights, and open their front door,
> evidence of their crimes will be in plain sight." [12, pp. 32-33.]
> "And, Petitioners are sitting ducks for having licenses anchored to
> fixed business premises addresses and violations that are in plain
> view any hour of any day that they are open to the public,
> including their valued law enforcement customers, not the least of
> whom are NYSP officers. [[ECF 13-3, ¶¶38, 58]." [22A591, p. 9]

19. *See,* also, ECF 27, TR27:8-13 and the audio recording of my Second Circuit oral arguments.

20. Adding irrefutable weight to this emergency submission is the abrupt, aggressive behavior of Hochul and Nigrelli, in targeting plaintiff Craig Serafini, and several additional FFLs in the greater Albany area, including Mr. Richard Sehlmeyer (herein, a supporting witness). Mr. Sehlmeyer is, himself, a retired Trooper, who is currently an FFL in firearms.

21. That Hochul and Nigrelli launched their attack using such an egregious over-reach of the very law Hochul jammed through the state legislature last summer is an unprecedented tactic. Defendants Hochul and Nigrelli have officially announced in writing their plan to do so – a letter first received by Mr. Jarrett Ford, an FFL dealer in firearms who also submits an affidavit in support of this emergency motion.

## Chronological Sequence of Events Supporting this Emergency Motion

22. The following is a chronological sequence of events supporting this emergency motion.[4]

---

[3] The effective date of the new laws complained of, herein.

[4] For the information of the court, the timing of these events reaching me is not co-linear with the dates of the events. For example, any written and e-mail communication was not received by all of my FFL plaintiffs. Indeed, more than one of the plaintiffs has not received even one of the letters and e-mails, herein. This motion is assembled with the assistance of more than fifteen FFLs based in NY. I selected either a plaintiff or the first dated enabling witness FFL to produce this motion, as quickly as possible.

23. July 25, 2023 – FFL and retired Trooper Richard Sehlmeyer was put through the first dealer inspection and is given a copy of the 31-point dealer inspection "checklist" from an officer of the NYSP "Domestic Terrorism Task Force."

24. August 4, 2023 – the National Shooting Sports Foundation sends an e-mail to its FFL dealer members in NY with a run-down of the substance of its call with the NYSP. It includes a potential launch date of September 13, 2023.

25. August 9, 2023 – an officer of the NYSP "Counter Terrorism Intelligence Unit" delivers the 4-page "checklist" to plaintiff Craig Serafini's employees, then later returns to engage Mr. Serafini in a substantive conversation on his compliance with the new laws.

26. August 10, 2023 – Mr. Serafini, receives an e-mail from "Angie" at the NYSP, informing him he is one of "a select few stores" invited to an advance viewing of "a test" of the new background check system. The NYSP e-mail advises him to keep this a secret.

27. August 10, 2023 – the first of my two letters went out to opposing counsel at the NYS-AG.

28. Saturday, August 19, 2023 – FFL Jarred Ford receives the Hochul-Nigrelli notification letter (undated) via USPS first class mail (postmark August 17, 2023).

29. August 21, 2023, week of – various FFLs begin receiving e-mails or first class mail copies of the Hochul-Nigrelli notification letter.

30. August 23, 2023 – various FFLs, including lead plaintiff Nadine Gazzola, began receiving e-mails from the FBI-NICS Unit with a .PDF of the Hochul-Nigrelli notification letter. Other FFLs, and some twice, receive this FBI-NICS Unit e-mail.

31. August 23, 2023 – the second of my two letters goes out to opposing counsel.

32. To the best of my knowledge, only Mr. Serafini has received every communication and inspection herein complained of. His risk of arrest by the defendant NYSP is palpable. His shop is the closest proximity to the Capitol of the plaintiffs, of Mr. Sehlmeyer, and of other FFLs that contacted me. As I expressed to my opposing counsel, I fear Mr. Serafini is being targeted by the defendants for no reason other than his proximity to the Capitol and the Albany media radius.

**The Hochul-Nigrelli Letter of August 18 Reveals the Intended Power Grab.**

33. Allow me at this point to explain in the technical language of our industry what has happened, and then to detail it with supporting statutory references, slowly, to walk the court through the extent of the defendants' bad faith.

34. In summary: On or about August 17, 2023, defendants NYS Gov. Hochul and NYSP Acting Superintendent Nigrelli abruptly announced, in writing, their intention to take over <u>all</u> firearms background checks in New York and to concurrently launch a new ammunition background system, as of Wednesday, September 13, 2023. A Hochul-Nigrelli take-over of <u>all</u> firearms background checks exceeds even their own 2022 state statutory authority. The Acting Superintendent has not certified the operational status of the ammunition background check.

**The Definition of "Firearm" at the Federal and State Levels Are Not the Same.**

35. The plaintiffs' argument in support of this emergency motion is simple and legally correct. The New York definition of "firearm" is not the same as the federal definition of "firearm." The New York definition of "firearm" is akin to the federal definition of "handgun." The U.S. definition of "firearm" overarches all manner of firearms and some component parts,

including, but not limited to, handguns, shotguns, rifles, frames, and receivers, as well as classifications of firearms that do not go through a NICS background check, like antique firearms. The New York definition of "firearm" is, by contrast, is a list of four types of "firearms" at federal law (delineated, below).

36. It is easy to grasp this aspect of basic firearms compliance law of FFLs in New York if you start with federal law. This is because if a person or a transaction fails at the federal level, the analysis is done. It's a fail. We in the industry begin all analysis by this approach.

   a. If there is a proceed or permitted activity at the federal level, then one does the drill down, in case there are state and/or local restrictions that could apply.

   b. Nationwide, there are few state and/or local restrictions, and they occur in hotbeds of restriction, such as New York City.

37. Until the news laws jammed through in summer 2022, as detailed throughout our filings in this case, the State of New York had very limited involvement and limited restrictions in the field of firearms compliance law involving FFLs. Excepting something like the state statutory definition of an "assault weapon" (eff. 2013), candidly, the federal system is so comprehensive that one rarely thought about state law, and, because there are so few FFLs left in New York City, one simply doesn't respond to questions from those dealers without studious attention to applicable local laws in their most recent iteration. Most federal-level consultants in this field do not even offer services at the NY state level.

38. It is critical the court look at and appreciate the difference between federal and state law for the definition of the word "firearm." These distinctions have no discernable litigation precedent.

39. Begin with the federal definition of "firearm" (hereafter "firearm-U.S.") at 18 U.S.C.

§921(a)(3), as follows:

> "The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."[5]

40. Now, here is the New York definition of "firearm" (hereafter "firearm-NY") from

NY PEN §265.00(3):

> "Firearm" means (a) *any pistol or revolver*; or (b) a shotgun having one or more barrels less than eighteen inches in length[6]; or (c) a rifle having one or more barrels less than sixteen inches in length[7]; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon[8]; or (f) any other weapon that is not otherwise defined in this section[9] containing any component that provides housing or a structure designed to hold or integrate any fire control component that is designed to or may readily be converted to expel a projectile by action of explosive…" (emphasis added; technical specifications for measurements omitted)

41. New York could have chosen to incorporate federal statutes and/or regulations when it added

definitions to its state laws. It did not.

---

[5] This definition was incorporated from the Gun Control Act of 1968 into the Brady Act of 1993 (which established NICS) at 28 CFR §25.2.

[6] Such "short-barreled shotgun," defined at 27 CFR §478.11 being prohibited at federal law with limited exception. 27 CFR §478.98.

[7] Such "short-barreled rifle," defined at 27 CFR §478.11 being prohibited at federal law with limited exception. *Id.*

[8] A term existing only at state law.

[9] The terms "rifle" and "shotgun" being defined in the same section, *see,* NY PEN §§400.00(11), (12).

42. Instead, New York wrote its own definitions for the words "firearm," "rifle," and "shotgun." Hochul's 2022 laws reinforced and compounded the "firearm" dichotomy. When Hochul pushed through her 10-bill package in summer 2022, amendments were made to the New York definitions of "firearm," "rifle," and "shotgun." (*See,* NYS Senate Bill 51001, p. 20, §24, effecting NY PEN §265.00(11), "Rifle," and §265.00(12), "Shotgun.") The state word definitions were edited a bit, but substantially retained their original meaning. Hochul intended these words remain separate and distinct from federal law. The term "firearm" in New York continues to mean, essentially, the handgun, such as a pistol or revolver.

43. Hochul and Nigrelli cannot now simply gloss over the definition of words in New York statutes of their own making in order to vastly expand their scope of power. It is an over-reach for Hochul and Nigrelli to assert power over the entire federal background check interface for FFLs with the FBI/ATF.

44. Here is the language in the Hochul-Nigrelli letter that demonstrates their bad intention:

    a. "This means that starting on September 13, 2023, background check requests **for firearm, rifle, shotgun**, and ammunition purchases will be submitted to the New York State Police and dealers will no longer submit requests directly to FBI NICS." (emphasis added, ¶1)

    b. "Effective September 13, 2023, prior to transferring **a firearm, rifle, shotgun,** or ammunition to a purchaser, you must go to www.NYSNICS.ny.gov to complete the background check process." (emphasis added, ¶3)

45. Defendants Hochul and Nigrelli have now revealed in writing that they do not intend to comply with their own laws – which laws of lesser power are already being challenged

through this case. This power grab is illegal by the defendants' own laws, even if our challenge to the new laws utterly fails.

### The Definition of "Point of Contact" Refers to Three Sub-Types, of which NY Law Authorizes Only a "Partial POC."

46. Additional support for plaintiffs' arguments from the Hochul-Nigrelli written notice is defendants' use of the industry term "Point of Contact." The defendants' use of this phrase is further proof of their intention to exceed the scope of state statutory authority enacted in 2022, and challenged in this lawsuit and in the pending appeal of request for preliminary injunction.

47. The additional vocabulary for this motion is "Point of Contact." This is a federal phrase from the 1993 Brady Act, signifying which federal and/or state agency is on lead to the FFL for which type of firearm for the FFL-initiated background check using the federal ATF Form 4473. 28 CFR §25.1.

    a. A "NICS state" or a "Brady state" or a "Non-POC state" is one where the FFL directly contacts the FBI for all background checks. This is true in the majority of thirty-eight (38) states in the U.S. and U.S. Territories. https://www.fbi.gov/file-repository/nics-participation-map.pdf.

    b. A "single POC state" or "full POC state" or simply a "POC state" is one where the FFL contacts a *state* office or agency, which a state intermediary contacts the FBI for the NICS database portion of a federally-required firearms background check, *only*. The state supplements the NICS using its own records and criteria for personal disqualification. This is the system in thirteen (13) states/territories.

    c. A "partial POC state" is one where the FFL contacts the FBI-NICS for the long gun background checks and, separately, contacts the state for the handgun checks. Like the state in a "single POC state," the state in the "partial POC state" is the intermediary to the FBI-NICS and supplements using its own records and criteria for personal disqualification. This is the system in only five (5) states/territories.

48. An ATF website page also illustrates these types by states with detail on which state agency is at play in partial or full POC states. *See* https://www.atf.gov/rules-and-regulations/permanent-brady-state-lists.

49. NY EXEC §228(1)(a) and (b) authorized New York to become, *only,* a "partial POC state." The language is clear, as follows:

> "(a) The division is hereby authorized and directed to serve as a state point of contact for implementation of 18 U.S.C. sec. 922(t), all federal regulations and applicable guidelines adopted pursuant thereto, and the national instant criminal background check system <u>for the purchase of firearms</u> *and ammunition*[10]."

> "(b) Upon receiving a request <u>from a licensed dealer</u> pursuant to section <u>eight hundred ninety-six</u> or <u>eight hundred ninety-eight</u> of the general business law, the division shall initiate a background check by (i) contacting the National Instant Criminal Background Check System (NICS) or its successor to initiate a national instant criminal background check, and (ii) consulting the statewide firearms license and records database established pursuant to subdivision three of this section, in order to determine if the purchaser is a person described in sections 400.00 and 400.03 of the penal law, or is prohibited by state or federal law from possessing, receiving, owning, or purchasing <u>a firearm</u> *or ammunition*."

---

[10] The state makes an error of federal law in this provision. There is no federal ammunition background check requirement or system. 18 U.S.C. §922(t) specifically and only relates to the transfer of "a firearm," as that term is defined at federal law. It is illegal for a state to use or attempt to use the NICS federal background check system for an ammunition background check. 28 CFR §25.11. This point is briefed throughout our record.

50. The NY EXE §228(1)(a) use of the word "firearms" is already covered above. The "licensed dealer" referenced in NY EXEC §228(1)(b) is the state-licensed dealer in "firearms," per the state statute, meaning handguns. NY GBL §896 is the gun show operator. NY GBL §898 is the private sale or transfer of firearms.

51. Defendants Hochul and Nigrelli misrepresent the law in their notification letter of August 17, 2023 when they write "Pursuant to Executive Law §228, New York has been designated a Point of Contact state for the purpose of processing National Instant Background Check ("NICS") transactions." That is not true. NYS is, at best, if all our challenges fail, a partial POC state.

52. Hochul's new (2022) laws direct NY-licensed dealers to contact NYSP for background checks for "firearms" *only.* NY EXE §228(7)(i) and (ii), referencing only "firearm."

53. The new laws neither authorize the state, nor require FFL dealers, to go through the NYSP for background checks for, e.g., rifles, shotguns, frames, receivers, and/or antique firearms. NY-licensed dealers are required to contact NYSP for a background check only in accordance with NY EXE §228. *See,* NY PEN §400.06(1), which states:

> "Any dealer in firearms that sells, delivers or otherwise transfers **any firearm** shall contact the division of state police to conduct a national instant criminal background check pursuant to section two hundred twenty-eight of the executive law."

54. This new law came out of the same NYS Senate Bill 51001, the "Concealed Carry Improvements Act," or "CCIA."

55. Defendant Hochul is a NYS-licensed attorney. Hochul originated the bills to the legislature, based upon her personal engagement with "experts" and named attorneys from outside

influence groups, as detailed in our filings in this case, beginning with the Complaint filed

November 1, 2022. The use of partial POC language in state statutes was intentional.

**A NYS Dealer License is Only Required if an FFL Wants to Sell "Firearms," as Defined by State Law, Meaning the Type Known as Handguns.**

56. The reading of state law urged herein is consistent with New York's state dealer licensing

scheme. New York only requires an FFL to obtain a duplicitous state license *if the FFL*

*intends to sell handguns*. The NYS dealer license grants the authority for an FFL to sell

"firearms," meaning handguns, such as pistols or revolvers. Here is the state statutory

language at NY PEN §265.00(9):

> ""Dealer in firearms" means any person, firm, partnership,
> corporation or company who engages in the business of
> purchasing, selling, keeping for sale, loaning, leasing, or in any
> manner disposing of, *any assault weapon, large capacity*
> *ammunition feeding device, pistol, revolver, or semiautomatic*
> *rifle*." (emphasis added)

57. An FFL Type-01 or Type-02 doing business in New York, such as the plaintiffs, is already

federally-authorized to sell firearms in accordance with federal laws, regulations, guidance,

and rulings. No state license is required if an FFL chooses not to sell handguns and sells all

other items permitted by the federal license, e.g., rifles, shotguns, frames, and/or receivers.

58. The new state laws, seeking to insert the NYSP between FFLs and the FBI must be read to

apply to those FFLs with NYS dealer licenses to sell "firearms," meaning handguns, and only

for a handgun background check. There is no other way to read these state laws.

59. The Hochul-Nigrelli letter makes false claims that New York will become now a "single POC

state," as follows:

a. "This means that starting on September 13, 2023, background check requests *for firearm, rifle, shotgun, and ammunition purchases* will be submitted to the New York State Police <u>and dealers will no longer submit requests directly to FBI NICS</u>." (emphasis added, ¶1)

b. "<u>As a dealer</u>, you and your staff will be required to register on the NYSNICS.ny.gov web application in advance of *New York becoming a Point of Contact State*." (¶2)

c. "Effective September 13, 2023, prior to transferring <u>a firearm, rifle, shotgun, or ammunition</u> to a purchaser, you must go to www.NYSNICS.ny.gov to complete the background check process." (¶3)

60. At best, NYSP may insert itself between the FFL who is a NY-licensed dealer and the FBI for NY "firearm" defined transactions, *only*, meaning, essentially, for handgun purchase background checks, only. Not for rifle purchase background checks. Not for shotgun background checks. There is no state statutory scenario whereby defendants Hochul and Nigrelli can take-over the entire "firearms" (by federal definition) background check system for FFLs.

**Worse, the NYSP Targeted a Plaintiff and Other FFLs Near the Capitol for Compliance Inspections that Could Result in Their Immediate Arrest.**

61. On July 25, 2023, unbeknownst to anyone but one dealer, Richard Sehlmeyer (now a witness, herein) the NYSP began compliance inspections, using the very laws challenged in this lawsuit and pending for a preliminary injunction. An emergency stay is critical to stave off impending criminal charges against one (or more) of the plaintiffs and additional FFLs similarly situated, such as Mr. Sehlmeyer. It is clear from the investigating officers' comments that there is top-down pressure to get underway with the inspections and an

estimate that the entire industry will be inspected within three years, with the results of the inspections "likely" being sent to the ATF to also impact federal licenses.

62. Mr. Serafini and Mr. Sehlmeyer set out their NYSP investigator encounters in accompanying affidavits.

63. Each violation of a new compliance law, nearly all of which are challenged within this lawsuit and requested to be stayed via preliminary injunction, is chargeable as an A misdemeanor. It is not an administrative violation limited to monetary fine and/or remediation.

64. All stories from inspected FFLs are the same: the NSYP-JTTF investigator *modus operandi* is a script of "lack of training" and needing "help" from the dealer to go back to the office with something to put on the "Whiteboard."

65. On Thursday, August 10, 2023 and Wednesday, August 25, 2023, I sent detailed letters to opposing counsel with enclosures, including requests for his assistance in verification of what was starting to come in to me and for his assistance of his clients voluntarily waiting for at least the Second Circuit ruling on the pending motion for preliminary injunction. In sum and substance, Mr. Kiernan responded that he had nothing of substance to offer.

66. This emergency motion ensues.

Respectfully submitted this 30th day of August 2023

*Paloma A. Capanna*
Counsel to the Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

_____

**Nadine Gazzola**, individually, and as co-owner,
President, and as BATFE Federal Firearms Licensee
Responsible Person for **Zero Tolerance
Manufacturing, Inc.**; *et al.*

     *Plaintiffs*

  *v.*

**KATHLEEN HOCHUL**, in her Official Capacity as
Governor of the State of New York; *et al.*

     *Defendants*

_____

**DECLARATION OF JARRETT FORD**
**– FORD AND SONS FIREARMS**

1.    I am Jarrett Ford and I make this Declaration under penalties of perjury. These statements are true to the best of my knowledge, and are based upon my personal knowledge and experience unless otherwise specified.

2.    I submit this affidavit in support of the plaintiffs' emergency motion for a judicial stay of the defendants' demonstrated intention to take over all firearms purchase background checks and against any state compliance inspections using the new (2022) laws.

3.    I hold and am the responsible person for a federal license Tye-01 to be a dealer in "firearms," as that term is defined at federal law. I am new to the industry. I opened my doors in November 2022.

4.    Because I sell handguns, I also have a state license as a dealer.

5. **Hochul-Nigrelli notification letter authentication.** My role in supporting this emergency motion is to authenticate the physical letter I received through the USPS on Saturday, August 19, 2023 on the letterhead of NYS Gov. Kathleen Hochul and NYS Police Acting Superintendent Stephen Nigrelli. The letter does not bear a date ("August ___, 2023"). The envelope was postmarked by USPS on August 17, 2023.

6. Attached to this declaration is a true copy of this letter and envelope as I received it.

7. **No other NYSP communication.** I did not receive the "Angie" e-mail (August 10, 2023). No NYSP officer has visited my shop, nor has an officer provided me with a copy of the 4-page dealer compliance checklist. I did not receive an e-mail from the FBI-NICS Unit (August 23, 2023 or August 25, 2023).

8. The Ford and Sons Firearms state license original application was processed through my local Greene County Clerk's Office. The NYS Police played <u>no</u> role in my state license and renewal process. The state license was signed by a county court judge. Upon information and belief, the county sheriff's office initiates the background checks as part of that county-centric process. From beginning to end, as a "state-licensed dealer," I had no direct contact with or from the state or the NYS Police.

9. My physical business premises is in the village of Catskill, Greene County, New York.

10. I am available to provide testimony or further written submission, if the court requests it.

**Whereas,** I respectfully request this emergency motion be granted in favor of the plaintiffs.

Dated: August 28, 2023

_Jarrett Ford_
Jarrett Ford

**KATHY HOCHUL**
Governor

**STEVEN A. NIGRELLI**
Acting Superintendent

Ford and Sons Firearms
~~11 ████████~~
Hudson NY 12534

August ___, 2023

**To:   New York State Firearm Dealers and Ammunition Sellers**

Pursuant to Executive Law § 228, New York has been designated a Point of Contact state for the purpose of processing National Instant Background Check ("NICS") transactions. This means that starting on September 13, 2023, background check requests for firearm, rifle, shotgun, and ammunition purchases will be submitted to the New York State Police, and dealers will no longer submit requests directly to FBI NICS.

As a dealer, you and your staff will be required to register on the NYSNICS.ny.gov web application in advance of New York becoming a Point of Contact State. Instructions on the registration process will be posted on the www.NYSNICS.ny.gov site.

Effective September 13, 2023, prior to transferring a firearm, rifle, shotgun, or ammunition to a purchaser, you must go to www.NYSNICS.ny.gov to complete the background check process.

*An Interactive Voice Response (IVR) telephone solution will be implemented as well so you may call in a background* check request to 1-877-NYS-NICS should the online system be unavailable. To use this functionality, you must have already set up your business's online profile and have a saved payment method on file in the NYSNICS application which you can register and login to at www.NYSNICS.ny.gov.

Please visit www.NYSNICS.ny.gov for more details about Point of Contact.

New York State Police
NYS NICS Unit
1-877-NYS-NICS
NYSNICS@troopers.ny.gov

USPOSTAGE
AUG 17 2022
ZIP 1220?
02 1T
30 10863

9000 2441844?

NEW YORK STATE POLICE
Building 22
1220 Washington Ave.
Albany, NY 12226-2252

OFFICIAL BUSINESS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

_____

**Nadine Gazzola**, individually, and as co-owner,
President, and as BATFE Federal Firearms Licensee
Responsible Person for **Zero Tolerance**
**Manufacturing, Inc.**; *et al.*

     *Plaintiffs*

  *v.*

**KATHLEEN HOCHUL**, in her Official Capacity as
Governor of the State of New York; *et al.*

     *Defendants*

_____

**DECLARATION OF PLAINTIFF CRAIG SERAFINI**
**– UPSTATE GUNS & AMMO**

1. I am Craig Serafini and I make this Declaration under penalties of perjury. These statements are true to the best of my knowledge, and are based upon my personal knowledge and experience unless otherwise specified.

2. As a co-plaintiff in the above-captioned case, I have read and am familiar with the contents of this emergency motion, specifically, and the record of this case, generally.

3. I submit this affidavit in support of the emergency motion. I incorporate as if set forth herein the explanations of the definitions of the word "firearms" at federal and at state law, and of the reading of the new (2022) state law as limiting the defendants, at best, to that of a "partial POC state" and at best to inspections of NY-licensed dealers in handguns. I concur with the description of the federal and state laws relating to what types of firearms

may be sold under which federal and state license.  It is clear to me that any attempt by the defendants to take over all firearms background checks – as the term "firearms" is understood at federal law – would exceed their state-level authority.  It would also exceed state-level authority for the defendants to audit all federally-licensed dealers or even all FFL Type-01s.

4.    I continue to object to everything set forth in our original motion for TRO/PI, and continue to ask the Second Circuit to rule in favor of the plaintiffs on our appeal of the request for preliminary injunction.  I continue to object to the defendants' intention to push their way in between our federally-licensed business and the FBI-NICS Unit, as set forth in my Declaration in support of the TRO/PI.  [ECF Doc. 13-4]

5.    This emergency motion is necessitated by the defendants' bad acts.  I ask this court to rule on this emergency motion ahead of Wednesday, September 13, 2023, in order to (a.) stave off any impending arrest of myself, any other of the plaintiff(s) and any other FFLs similarly situated; (b.) stop the defendants from initiating a background check system on all firearms (federal definition) in excess of state authority[1]; (c.) stop the defendants from conducting compliance audits on all federal firearms licenses, regardless of type or state

---

[1] Note of Counsel:  the challenge to the state authority is pending as part of the appeal for a preliminary injunction.  The declarations and exhibits to this motion demonstrate the intention of defendants to *exceed* even their own new power under the challenged state laws.

license, in excess of state authority[2]; and, (d.) stop the defendants from launching an ammunition background check[3], which system has not been certified as operational.

6.     I request the court rule in our favor on the already-pending appeal of our comprehensive motion for preliminary injunction. In submitting this emergency motion, I do not waive any argument or request previously submitted.

7.     **<u>NYSP dealer compliance interview at my store</u>**. On Wednesday, August 9, 2023, shortly after my store opened at 10:00 a.m., two NYS Police officers came to my store, "Upstate Guns & Ammo," with a copy of the 4-page "checklist" in hand. I was not present. I received a call from one of my two employees who were present, Jimmy, asking when I would be getting there. I heard Jimmy to say that there were officers at the shop and they were dropping off a compliance checklist concerning the new laws. I received the 4-page compliance checklist from my employees when I arrived at the shop. One officer returned, at or after approximately 2:00 p.m. I was present at the shop at that time. The ensuing conversation with the officer lasted approximately thirty minutes (30-minutes).

8.     Attached to this affidavit is a complete copy of the 4-page "checklist" from the NYSP investigator received August 9, 2023.

9.     I understood the purpose of the visit would be to discuss the suspicious, attempted ammunition purchase I had reported the prior week to the local police department and the

---

[2] Note of Counsel: similarly, the challenge to the state authority is pending as part of the appeal for a preliminary injunction. The declarations and exhibits to this motion demonstrate the intention of defendants to *exceed* even their own new power under the challenged state laws.

[3] Note of Counsel: the state authority is pending as part of the appeal for a preliminary injunction.

FBI.  I e-mailed the officer video surveillance footage of the suspect while he was still at the store, being at or about 2:48 p.m.

10. The officer, however, wanted to talk about dealer compliance inspections, which relate to the "checklist."  The officer asked me pretty early in the conversation "whether your guys gave you the checklist that I dropped off," or words to that effect.

11. I knew enough about the new (2022) compliance laws from our lawsuit that I knew the NYSP "checklist" was the substance of what they are going to run us over with, if we don't win our case.  So, in response to his question I said words to the effect that if NYSP goes forward with these inspections and arrests dealers it will drive a wedge between dealers and law enforcement that will benefit no one but the actual criminals.  The officer said "I know it.  I get it.  And I don't blame you."

12. I got the near immediate impression from the officer, whose card indicates he is NYSP Investigator Bonanno, that he was a guy venting on the job about what he was being told to do by headquarters.  I formed this impression because of the many remarks made by Investigator Bonanno during the conversation, including, but not limited to:

   a. the NYSP was told to start doing inspections "immediately;"

   b. he put together the 4-page form to improve what he understood to be the cut-and-paste list taken out of the General Business Law;

   c. dealer inspections have nothing to do with their jobs at JTTF ["Joint Terrorism Task Force"];

d.  the JTTF is being used as a "catch-all" and they are getting stuck with dealer inspections as an additional duty;

e.  he had no training in dealer inspections;

f.  he couldn't answer questions about, e.g., definitions of specific terms or phrases, because the officers were trying to get their own answers to the same questions;

g.  he and other officers feel that some of the provisions are contradictory to one-and-other;

h.  any feedback on the checklist or whatever that I could share he would go back to the office and add it to the officers' "White Board," which is the questions they need answers to [before *what*, he didn't say].

13.  Investigator Bonanno volleyed with me, behaving as if he was sympathetic to dealers getting caught under a pile of new requirements from the politicians in Albany. He referenced the new laws under NY General Business Law §875 with words like "This stuff doesn't make any sense!" When Investigator Bonanno said "Where the hell are you supposed to send that?" (referencing copies of the Form 4473 and the A&D Book), I jived back, "You tell me," and he bounced straight back, "That's what I'm talking about!"

14.  Through Investigator Bonanno's casual manner, body language, lack of uniform, and ease being within my small shop and with my employees and with customers going in and out, he came across to me as just a guy on the force who disagreed with what the upstairs guys were yelling at the rank-and-file to do, so he was just trying to give me the head's up.

15.   I did not know Investigator Bonanno prior to his contacting me over the suspicious customer I reported. He is not among the law enforcement customers who frequent my shop.

16.   At no time did Investigator Bonanno ask if I wanted to contact an attorney, nor did he inform me that I had no obligation to answer his questions or that I could remain silent or that I could plead the Fifth Amendment.

17.   I told Investigator Bonanno that I was a co-plaintiff in the *Gazzola v. Hochul* lawsuit about these very compliance laws, and he responded in a chummy manner, "Good! Somebody's got to do something about this." Investigator Bonanno gave me the distinct impression that he, personally, was on my side in the matter.

18.   Another example of an exchange between us was when Investigator Bonanno said that they did some calculations and they anticipate auditing every dealer within the next three years. I asked him how many hours he thought it would take to do a compliance inspection? He said maybe three of four. I then asked him how many hours he thought it took the ATF to do their most recent inspection at my shop? He said one to two hours. I told him: four ATF agents x three weeks, full-time. Investigator Bonanno expressed disbelief. He wanted to know why it took so long? When I started to give him a basic explanation of what's involved in auditing an FFL's A&D Book,[4] he told me he had no

---

[4] Note by Counsel: the "A&D Book" is the dealer's bound book of "Acquisitions and Dispositions," as required by federal law, for each firearm brought into inventory (the "acquisition") and taken out of inventory through, e.g., sale (the "disposition"). A detailed discussion concerning the same, including constitutional and legal challenges are pending as part of the appeal for a preliminary injunction.

idea what I was talking about. None. Likewise, Investigator Bonanno said he had no idea the A&D Books are now trending towards on-line systems through third party vendors, such that a dealer might not have a physical copy of it on hand for spot inspections.

19.  Investigator Bonanno said the NYSP compliance forms would "likely" be forwarded to the ATF to affect our ability to get our licenses renewed.

20.  On the advice of Counsel, I am not including in this affidavit a full accounting of my statements to Investigator Bonanno because one or more such statements may have been made against my legal interests. I do not waive any defenses that may be available to me in any subsequent criminal case basis this submission in support of the emergency motion in this civil case.

21.  Investigator Bonanno referred to himself and his group as "JTTF." It was not until preparing this affidavit that I registered that the business card of the officer states he was Mr. Brian Bonanno, Investigator, Counter Terrorism Intelligence Unit – Central, out of the Latham, NY office, with a troopers.ny.gov e-mail address.[5] Investigator Bonanno referred to himself and other officers speaking with dealers as "JTTF" and/or "Joint Terrorism Task Force." It is only now that I look at his card that he gave me that I see "Counter Terrorism Unit." I do not know the relationship, if any, between these two offices.

---

[5] Note of Counsel: It appears the "Counter Terrorism and Intelligence Units," the "Joint Terrorism Task Force," and the "Intelligence Center" are all part of the state's "Fusion Center." See, Assistant Deputy Superintendent Lt. Col. Andrew J. Crowe on https://troopers.ny.gov/our-executive-team.

22.  According to the Troopers.ny.gov website page for the "Counter Terrorism Unit" at

https://troopers.ny.gov/counter-terrorism:

> "The mission of the New York State Police Office of Counter
> Terrorism is to detect, deter, and prevent future terrorist attacks by
> working in partnership with our citizens, the New York State
> Division of Homeland Security and Emergency Services, and the
> law enforcement community. The Office of Counter Terrorism
> seeks to advance the efficient, timely and accurate exchange of
> information on a statewide basis."

23.  I did not receive further contact from Investigator Bonanno since then, as of the signing of

this affidavit, the evening of August 28, 2023.

24.  **NYSP "Angie" e-mail (August 10).** I received an e-mail from "Angie" showing an

e-mail box of "NYSNICS@troopers.ny.gov" (dated August 10, 2023). The subject line is

"NYS Point of Contact Registration Pilot."

25.  Attached to this affidavit is a copy of this e-mail.

26.  I did not respond to it. I did not participate in the session on August 18, 2023.

27.  **NYSP "Pilot" e-mail (August 17).** I also received an e-mail from the e-mail box

"NYSNICS@troopers.ny.gov" (dated August 17, 2023). The subject line of this e-mail is

"NYS Point of Contact Pilot Registration."

28.  Attached to this affidavit is a copy of this e-mail and the .PDF version of the Hochul-

Nigrelli letter attached to it.[6]

---

[6] Note from Counsel: This version of the Hochul-Nigrelli letter is the third such version
transmitted to affiants. This version differs from the version received by Jarrett Ford as the
date of "August 17, 2023" is completed. It differs from the version e-mailed out by the FBI,
which bears no date line, as illustrated in the version received by Nadine Gazzola.

29. I did not respond to it.

30. **General Lack of NYSP Communication**. I otherwise did not receive the Hochul-Nigrelli letter from the NYSP. Nor did I receive either of the two FBI e-mails, upon information and belief, received by co-plaintiff Nadine Gazzola.

31. The Upstate Guns & Ammo state license original application and renewal applications since 2014 went through our local Schenectady County Clerk's Office. The process of going through the county clerk's office for the state dealer's license and renewal is, upon information and belief, the same for all FFLs in New York. The NYS Police role in the state license and renewal is non-existent. The license and the renewal is reviewed and signed by a county court judge. Upon information and belief, the county sheriff's office initiates the background checks as part of that process. From beginning to end, as a "state-licensed dealer," I have no direct contact with or from the state or the NYS Police.

32. My business premises is in Niskayuna, Schenectady County, New York. It has been at this location since I first obtained my original federal and state licenses in 2014. This is the business premises address I provided on each application and renewal form for my federal and state licenses.

33. **NSSF e-mail (August 4, 2023)**. I am also the authenticating witness for an e-mail I received on forward that originated from the National Shooting Sports Foundation ("NSSF") on August 4, 2023. Upon information and belief, the NSSF sent it to their member FFLs in New York. It was forwarded to me by a NY distributor with whom I do business.

34. I was not invited to participate in any NYSP conference call for the NSSF and/or FFLs in New York. The same is referenced in the first paragraph of the e-mail. A substantial amount of the e-mail content is either validated by materials I received and include with this affidavit and/or, upon information and belief, are otherwise received and attached to affidavits from others in support of this emergency motion.

35. **Fear of Imminent Arrest**. Since the encounter with the NYSP Counter Terrorism Investigator on August 9, 2023, *my* whole world is terrorized. I don't know what's going to happen to me. I fear that I could be arrested, at any time.

36. I am dealing with this immediate threat on a day-to-day basis. I've started explaining to my kids, "If something happens, you guys gotta pick up the load while I'm in handcuffs or whatever -- " I'm trying to explain to them "This is where things are, if you have to come to get me." *I mean, how do I even talk to my kids about this?* I don't know what's involved in living a life where you have to worry about the very real probability that you're going to get arrested. Within this past year of the lawsuit pending, I achieved my goal of becoming an ordained minister.

37. What confounds me about this juncture is all I've done is want to create a business that I could enjoy with people who have similar interests and to do so legally.

38. I'm confused, trying to reflect on what I've been thinking since December 5, 2022, the day these laws we're fighting in this case went into effect. I think I've managed the past year of working with counsel on this case based upon my belief that the police would respect that we've taken them to court and we're doing the right thing and that we'll all respect the ultimate decision [on the merits]. I mean, my brain comprehends that we don't yet have a

formal (judicial) stay, but it's the Second Amendment and I'm a federally-licensed dealer fulfilling all federal, state, and local requirements, excepting one or more of the new (2022) compliance laws that are the subject of this lawsuit. Since commencement of this case on November 1, 2022, we've all – both sides of this case plus all the other CCIA cases – we've all come this far in a sort of a détente or a civilized understanding that we would all respect the process.

39. In my heart, I want to say that I still believe in the system that we have and if you do the right thing you're not in jeopardy, but now? This belief – this *core* belief – is now hanging by a thread of hope. I don't know what's going to happen to me, if the court doesn't grant an immediate stay.

40. I am available to provide testimony or further written submission, if the court requests it.

**Whereas,** I respectfully request this emergency motion be granted in favor of the plaintiffs.

Dated: August 28, 2023

_____

Craig Serafini

# NY Dealer Certification / Compliance Checklist

| Business Name/FFL Number | Address |
|---|---|
| | |

| Date Inspected | Inspected By |
|---|---|
| | |

| | Yes | No |
|---|---|---|
| 1) Has the dealer implemented a security plan? (GBL 875-b{1}) | | |
| 2) Are all firearms, rifles and shotguns secured, other than during business hours, in a locked fireproof safe or vault on the dealer's business premises or in a secured and locked area on the dealer's business premises? | | |
| 3) Is ammunition stored separately from firearms, rifles and shotguns and out of reach of customers? | | |
| 4) Is the dealer's business premises secured by a security alarm system that is installed and maintained by a properly licensed security alarm operator? | | |
| 5) Is the security alarm system capable of being monitored by a central station? | | |
| 6) Does the security system provide complete protection and monitoring for all accessible openings into areas containing firearms, rifles, shotguns, and/or ammunition, including doorways and windows? | | |
| 7) Does the security system provide partial motion and sound detection at certain other areas of the premises containing firearms, rifles, shotguns, and/or ammunition, as deemed appropriate by the licensed installer ? | | |
| 8) Is the dealer equipped with a video recording device at each point of sale and each entrance and exit to the premises, which shall be recorded from both the indoor and outdoor vantage point? | | |

1

# NY Dealer Certification / Compliance Checklist

| | Yes | No |
|---|---|---|
| 9) Does the dealer maintain recordings for a minimum of two years? | ☐ | ☐ |
| 10) Does the dealer exclude all persons under 18 years old from areas where firearms, rifles, shotguns, or ammunition are stocked or sold, unless such person is accompanied by a parent or guardian? | ☐ | ☐ |
| 11) Does the dealer sell or otherwise dispose of firearms, rifles, and shotguns only at the location listed on the dealer's federal firearms license or at gun shows? | ☐ | ☐ |
| 12) Does the dealer provide training to all new employees within 30 days of employment? | ☐ | ☐ |
| 13) Have all existing employees completed the training published by the New York State Police before March 3, 2023? | ☐ | ☐ |
| 14) Are records documenting the successful completion of the required employee training maintained for at least five years following the completion of such training by each employee? | ☐ | ☐ |
| 15) Do all employees complete the required training annually? | ☐ | ☐ |
| 16) Are dealer employees or agents under the age of 21 participating in the sale or disposition of firearms, rifles, or shotguns? | ☐ | ☐ |
| 17) Have all employees or agents received training before they participate in the sale or disposition of firearms, rifles, or shotguns? | ☐ | ☐ |
| 18) Does the dealer maintain a record book or electronic-based record of purchase, sale inventory, and other records at the dealer's place of business? | ☐ | ☐ |

2

# NY Dealer Certification / Compliance Checklist

| | Yes | No |
|---|---|---|
| 19) Does the dealer submit a copy of records to the State Police every April and October? | | |
| 20) Do the records include the make, model, caliber or gauge, manufacturers, name, and serial number of all firearms, rifles, and shotguns that are acquired or disposed of not later than one business day after their acquisition or disposition ? | | |
| 21) Are monthly backups of paper records maintained in a secure container designed to prevent loss by fire, theft, or flood? | | |
| 22) If the dealer chooses to maintain and electronic-based record system, are those records backed up on an external server or over the internet at the close of business each day? | | |
| 23) Does the dealer record the date, name, age, occupation, and residence of any person from whom a firearm is received or to whom a firearm is delivered, and the caliber, make, model, manufacturer's name and serial number, or if none , any other distinguishing number or identification mark on such firearm? | | |
| 24) Are all firearms, rifles and shotguns accounted for through an inventory check prepared once each month and maintained in a secure location? | | |
| 25) Is sold firearm, rifle, and shotgun disposition information, including serial numbers, dates of sale, and identity of purchasers, maintained and available at any time to government law enforcement agencies and to the manufacturer of the weapon or its designee? | | |
| 26) Are the records documenting the acquisition, disposition, tracing, and other transactions involving firearms, rifles and shotguns maintained for at least twenty years following each transaction? | | |

# NY Dealer Certification / Compliance Checklist

| | Yes | No |
|---|---|---|
| 27) Does the dealer maintain records of criminal firearm, rifle and shotgun traces initiated by the ATF? | | |
| 28) Are ATF Form 4473 transaction records retained on the dealer's business premises in a secure container designed to prevent loss by fire, theft, or flood? | | |
| 29) Does the dealer implement and maintain sufficient internal procedures to ensure compliance with Article 39-BB of the General Business Law? | | |
| 30) Does the dealer annually certify to the New York State Police, by January 31 of each year, that the dealer has complied with all of the requirements of Article 39-BB of the General Business Law? | | |
| 31) Does the dealer provide the Division of State Police full access to the dealer's premises for periodic inspections? | | |

Additional Comments

Signature

4

# FW: NYS Point of Contact Registration Pilot

| | |
|---|---|
| From: | Craig Serafini (craig@upstategunsandammo.com) |
| To: | pcapanna@yahoo.com |
| Date: | Tuesday, August 29, 2023 at 12:00 AM EDT |

-------- Original message --------
From: "troopers.sm.nysnics" <NYSNICS@troopers.ny.gov>
Date: 8/10/23 12:46 PM (GMT-05:00)
To:
Subject: NYS Point of Contact Registration Pilot

Hello,

I am reaching out to you today to ask for your assistance with the rollout of the new registration process for dealers as NY becomes a Point of Contact State in the upcoming weeks.

We ask that you do not pass on any of the information shared with you during this process as it is a test! We are starting with a select few stores to ensure that the process put in place is working properly and the directions are correct and understandable.

We would ask that the administrators set up the accounts initially, we will have staff that will verify all information for accuracy and then approve the dealer's registration. Upon receiving your registration approval email, you can set up your saved payment method and, invite some or all of your employees to register as well.

The test will take place on Friday August 18th around 10:00am, I will send you out the notification that will eventually be sent out to all dealers letting you know that registration has opened. At that point we would like the administrators to go online, we will provide the link, to begin the registration.

Please let me know if you have any questions and are willing to be part of our pilot groups.

Thank you for your time and assistance!

Angie

CONFIDENTIALITY NOTICE: This e-mail, including any attachments, may contain highly sensitive and confidential information. It is intended only for the individual(s) named. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

# FW: NYS Point of Contact Pilot Registration

From: Craig Serafini (craig@upstategunsandammo.com)

To: pcapanna@yahoo.com

Date: Sunday, August 27, 2023 at 11:31 PM EDT

-------- Original message --------
From: "troopers.sm.nysnics" <NYSNICS@troopers.ny.gov>
Date: 8/17/23 9:36 PM (GMT-05:00)
To:
Subject: NYS Point of Contact Pilot Registration

Hello,

New York State will become a Point of Contact State within the next couple of weeks. We are doing a phased rollout of the program beginning with Dealer Registration. You are receiving this email because we would like you to be one of the first firearms dealers to register through this new process.

The attached notification will be sent out to all dealers in the upcoming weeks. Please read the attached notification and follow the directions to complete your registration.

We would like your feedback on the registration process and documentation provided on the site. Your input is very important as we work to improve our processes.

New York State Police

NYS NICS Unit

1-877-NYS-NICS

NYSNICS@troopers.ny.gov

CONFIDENTIALITY NOTICE: This e-mail, including any attachments, may contain highly sensitive and confidential information. It is intended only for the individual(s) named. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

 NYS Point of Contact Notification.pdf
120kB

FW: New York's New Background Check System

From: Craig Serafini (craig@upstategunsandammo.com)

To: pcapanna@yahoo.com

Date: Monday, August 28, 2023 at 02:45 PM EDT

Sent from my Galaxy

-------- Original message --------
From: NSSF <nssfnews@nssf.org>
Date: 8/28/23 2:24 PM (GMT-05:00)
To: craig@upstategunsandammo.com
Subject: New York's New Background Check System

NSSF Working to Get Answers

Email not displaying correctly?
View it in your browser.



| MEMBERSHIP | I | RETAILERS | I | RANGES | I | MANUFACTURERS |

## New York's New Background Check System
### *NSSF Working to Get Answers*

On Friday, NSSF® had a call with the Deputy Secretary for Public Safety concerning New York state becoming a point of contact state and completely changing the process retailers have become accustomed to. This call follows a webinar put on by the New York State Police earlier in the month describing the transition to a point of contact state. While there are many questions still outstanding, NSSF is doing their best to act as an intermediary during these challenging times for retailers. Unfortunately, the process has been done without input from the firearm industry and will most likely cause severe impacts to your daily business.

Our goal is to try to continue to educate retailers about the impending transition because at this point, we have learned that the communication from the state has not been the greatest. It has also come to our attention that FBI NICS has been sending emails to retailers to inform them of the changes and the steps that retailers need to take to register with the NYSP in order to run firearm and ammunition background checks.

The NYSP have explained to NSSF that there will be a more extensive document guiding you through the process that will be ready by the end of this week – we will send it along

to members when we receive it.

Below is the text of New York's Letter to Dealers concerning the registration process, which you should have hopefully already received. We would like to ask all retailers to take the time to follow the process and register your store and employees so that you will not experience any self-imposed delays on September 13th.

NSSF continues to encourage New York state to make sure they have contingency plans in place for the inevitable delays and impacts to your business that will most likely occur with the new changes. While the state police is your ultimate authority, please let NSSF know of any issues that go unanswered so that we may try to assist you. Please contact us with these issues.

**To: New York State Firearm Dealers and Ammunition Sellers**

Pursuant to Executive Law § 228, New York has been designated a Point of Contact state for the purpose of processing National Instant Background Check ("NICS") transactions. This means that starting on September 13, 2023, background check requests for firearm, rifle, shotgun, and ammunition purchases will be submitted to the New York State Police, and dealers will no longer submit requests directly to FBI NICS.

As a dealer, you and your staff will be required to register on the NYSNICS.ny.gov web application in advance of New York becoming a Point of Contact State. Instructions on the registration process will be posted on the **https://NYSNICS.ny.gov** site.

Effective September 13, 2023, prior to transferring a firearm, rifle, shotgun, or ammunition to a purchaser, you must go to **https://NYSNICS.ny.gov** to complete the background check process.

An Interactive Voice Response (IVR) telephone solution will be implemented as well so you may call in a background check request to 1-877-NYS-NICS should the online system be unavailable. To use this functionality, you must have already set up your business' online profile and have a saved payment method on file in the NYSNICS application which you can register and login to at **https://NYSNICS.ny.gov**.

Please visit **https://NYSNICS.ny.gov** for more details about Point of Contact.

NSSF will continue to monitor the situation and the impending roll out and will continue to keep our industry members informed.



# FIREARMS INDUSTRY JOBS

Search for jobs. Recruit employees.



Buy a gun for someone who can't, buy yourself 15 years in jail.



Ensure NICS works as intended



View these important safety messages

LOGIN TO THE MEMBER PORTAL  |  BECOME A MEMBER

   

*Copyright © 2023. All rights reserved.*

National Shooting Sports Foundation
6 Corporate Drive
Shelton, CT 06484

update subscription preferences

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

_____

**Nadine Gazzola**, individually, and as co-owner,
President, and as BATFE Federal Firearms Licensee
Responsible Person for **Zero Tolerance
Manufacturing, Inc.**; *et al.*

     *Plaintiffs*

  *v.*

**KATHLEEN HOCHUL**, in her Official Capacity as
Governor of the State of New York; *et al.*

     *Defendants*

_____

**DECLARATION OF RICHARD SEHLMEYER
– THE GUN SHOP AT MacGREGOR'S, LLC**

1.    I am Richard Sehlmeyer and I make this Declaration under penalties of perjury. These statements are true to the best of my knowledge, and are based upon my personal knowledge and experience unless otherwise specified.

2.    I submit this affidavit in support of the plaintiffs' emergency motion for a judicial stay of the defendants' demonstrated intention to take over all firearms purchase background checks and against any state compliance inspections using the new (2022) laws.

3.    I hold and am the responsible person for a federal license Tye-01 to be a dealer in "firearms," as that term is defined at federal law. Because I sell handguns, I have also a NYS dealers license.

4.  My business is "The Gun Shop at MacGregor's, LLC" in Lake Luzerne, New York.  We sell handguns, rifles and shotguns, ammunition, and accessories.  I also offer full gunsmithing services.

5.  I first obtained a federal license as a Type-01 "Dealer in Firearms" twenty years ago in 2004.

6.  I first obtained my FFL-01 when I was still working for the NYS Police.  I retired from the NYSP in 2007.  I have also served in law enforcement at the local level.  Since 2007, I have worked full-time as an FFL dealer in firearms in the lawful stream of commerce in New York.

7.  I have also a concealed carry license issued by Warren County.

8.  **NYSP 4-Page "NY Dealer Certification/Compliance Checklist" authentication.**  My role in supporting this emergency motion is to authenticate the 4-page, physical document titled "NY Dealer Certification/Compliance Checklist."  Although it does not bear any identifying information, I personally received this document from NYSP-JTTF Senior Investigator Warren Law on July 25, 2023.

9.  Attached to this declaration is a true copy of this 4-page "checklist."

10.  **Mine was the first dealer audit using the checklist**.  Upon information and belief from Mr. Law, he oversees the NYSP Domestic Terrorism Task Force for G Troop and C Troop (covering an area from Warren/Essex Counties to the Pennsylvania border).  Upon information and belief, Mr. Law is now tasked with inspecting the gun dealers under the new (2022) laws.

11. Mr. Law contacted me and asked if he could come by and go through inspection at my shop. Mr. Law told me the NYSP-JTTS was directed to start inspections by August 1, 2023. We've known each other for years and Mr. Law is a customer of mine, and so I agreed. He said I would be the first dealer to be inspected using the new checklist.

12. When Mr. Law arrived at my shop, he handed me the blank copy of the questionnaire.

13. Mr. Law stated he had no idea on how to interpret the new 31 question "questionnaire" and that he was seeking my feedback and knowledge of what was passed.

14. At the start of the compliance audit, I gave Mr. Law a statement drawn up for me by an attorney who I know, which included that I am not an attorney and I have not received any guidance on how to implement the changes brought on by the new (2022) laws. I asked Mr. Law to read it.

15. The audit went on for just over three hours on July 25, 2023.

16. Mr. Law used the checklist, starting with the first question and went through the questions one-by-one. My business premises is a single room, approximately 400 square foot in size. Unless something is behind the counter, it's in plain view. I responded to the questions and Mr. Law offered various remarks.

17. Mr. Law told me that the inspections will include box stores.

18. Mr. Law said he was given an ATF list of all FFLs to audit *with no differentiation between types of FFLs*.

   a. The NYS Police do not have state law authority to audit any FFL which does not have a state dealer license. The "dealer" license in New York, under NY Penal Law

§400.00(1-a) is limited to an FFL that is either a gunsmith and/or that sells handguns and/or any of four other specific types of NY-illegal firearms, including, e.g., an "assault weapon" (which is defined at state law as part of the 2013 "SAFE Act").

b. For the information of the court, the ATF publishes to its website and updates monthly a list of all FFLs in every U.S. state and territory.

c. The public ATF list includes all FFL types – not just FFL Type-01 dealers in firearms and FFL Type-02 pawnbrokers. The ATF list includes types, e.g., FFL Type-07 (manufacturer of firearms) and FFL Type 11 (importer of destructive devices).

d. Please refer to the ATF website page https://www.atf.gov/resource-center/fact-sheet/fact-sheet-federal-firearms-and-explosives-licenses-types for an overview of the licensing and types.

e. Please refer to the ATF website page https://www.atf.gov/firearms/listing-federal-firearms-licensees for up-to-date lists of FFLs by state.

f. The new (2022) laws do not grant authority to the NYS Police to conduct a compliance audit to any federally-licensed type, other than the Type-01 (dealer in firearms, including gunsmiths) and the Type-02 (pawnbroker), *and then, only if that Type-01 or Type-02 also has a NYS dealer license.*

19. I also explained to Mr. Law that he had no state authority to audit federally-licensed dealers who are not also state-licensed dealers.

20. I explained to Mr. Law that under the new (2022) laws, I have an option to turn in my NYS dealer license and simply operate on my federal license, as long as I do not sell handguns or the other three firearms listed in NY Penal Law §265.00. I also expressed that I have

another legal option to stop selling handguns and surrender my state license and not do any gunsmithing, then none of NY General Business Law §875 would apply as to the definition of the term "dealer" as used in that section.

21.    If the NYS Police impose state "dealer" audits on all FFLs, regardless of federal license type (meaning Types 03 through 11), there is a probability of wrongful widespread arrests on E felony charges.  There is no state authority to audit anyone but a NY-licensed dealer in "firearms" by the state's own definition, meaning, handguns.

22.    I told Mr. Law at the end of his audit "It's going to put me out of business."  I asked him what would happen next.  Mr. Law told me he was "using it for feedback and critique."

23.    In plain English:  it's going to be a disaster if the NYSP takes this live.

24.    **Prior NYSP interaction**.  A few months ago, I called the NYS Police Permit Section in Albany and got a supervisor.  I pointed out that a muzzleloader is not a "rifle" under federal law and I was not permitted to run a NICS check through the FBI NICS section for it.  I also told him I called the ATF Albany office to verify the fact that I cannot run a NICS check through the NICS for a non-gun.  The officer told me: "We understand – just ignore that part of the law."  The problem with that approach, of course, is that the law remains on the books and available to be charged against an individual.

25.    **No other NYSP communication**.  I did not receive the Hochul-Nigrelli notification letter. I did not receive the "Angie" e-mail (August 10, 2023).  I did receive two (duplicate) e-mails from the FBI-NICS Unit (August 23, 2023 and August 25, 2023) with the Hochul-Nigrelli notification letter attached to it in .PDF form.

26. My state dealers license and state gunsmith license were processed, issued, and renewed by the county judge through the Warren County Clerk's Office. From beginning to end, I had no direct contact with or from the state or the NYS Police.

27. Even though the NYSP issues a "State Firearms Dealers ID Number" when one obtains the state license, it appears the NYSP do not have a database of those FFLs to whom they have issued such a number. Mr. Law told me they got the list of dealers from the ATF. This would appear consistent with the opening line of the FBI e-mail of August 23 & 25, 2023, which reads "The NICS Section has been asked to send out this notice from NY to the FFLs we have on file." The NYS Police are having to rely, themselves, upon the FBI to get out their first letter.

28. My physical business premises is in Lake Luzerne, Warren County, New York.

29. I am available to provide testimony or further written submission, if the court requests it.

**Whereas,** I respectfully request this emergency motion be granted in favor of the plaintiffs.

Dated: August 27, 2023

Richard Sehlmeyer

# NY Dealer Certification / Compliance Checklist

| Business Name/FFL Number | Address |
|---|---|
|  |  |

| Date Inspected | Inspected By |
|---|---|
|  |  |

|  | Yes | No |
|---|---|---|
| 1) Has the dealer implemented a security plan? (GBL 875-b{1}) |  |  |
| 2) Are all firearms, rifles and shotguns secured, other than during business hours, in a locked fireproof safe or vault on the dealer's business premises or in a secured and locked area on the dealer's business premises? |  |  |
| 3) Is ammunition stored separately from firearms, rifles and shotguns and out of reach of customers? |  |  |
| 4) Is the dealer's business premises secured by a security alarm system that is installed and maintained by a properly licensed security alarm operator? |  |  |
| 5) Is the security alarm system capable of being monitored by a central station? |  |  |
| 6) Does the security system provide complete protection and monitoring for all accessible openings into areas containing firearms, rifles, shotguns, and/or ammunition, including doorways and windows? |  |  |
| 7) Does the security system provide partial motion and sound detection at certain other areas of the premises containing firearms, rifles, shotguns, and/or ammunition, as deemed appropriate by the licensed installer ? |  |  |
| 8) Is the dealer equipped with a video recording device at each point of sale and each entrance and exit to the premises, which shall be recorded from both the indoor and outdoor vantage point? |  |  |

1

# NY Dealer Certification / Compliance Checklist

| | Yes | No |
|---|---|---|
| 9) Does the dealer maintain recordings for a minimum of two years? | ☐ | ☐ |
| 10) Does the dealer exclude all persons under 18 years old from areas where firearms, rifles, shotguns, or ammunition are stocked or sold, unless such person is accompanied by a parent or guardian? | ☐ | ☐ |
| 11) Does the dealer sell or otherwise dispose of firearms, rifles, and shotguns only at the location listed on the dealer's federal firearms license or at gun shows? | ☐ | ☐ |
| 12) Does the dealer provide training to all new employees within 30 days of employment? | ☐ | ☐ |
| 13) Have all existing employees completed the training published by the New York State Police before March 3, 2023? | ☐ | ☐ |
| 14) Are records documenting the successful completion of the required employee training maintained for at least five years following the completion of such training by each employee? | ☐ | ☐ |
| 15) Do all employees complete the required training annually? | ☐ | ☐ |
| 16) Are dealer employees or agents under the age of 21 participating in the sale or disposition of firearms, rifles, or shotguns? | ☐ | ☐ |
| 17) Have all employees or agents received training before they participate in the sale or disposition of firearms, rifles, or shotguns? | ☐ | ☐ |
| 18) Does the dealer maintain a record book or electronic-based record of purchase, sale inventory, and other records at the dealer's place of business? | ☐ | ☐ |

# NY Dealer Certification / Compliance Checklist

| | Yes | No |
|---|---|---|
| 19) Does the dealer submit a copy of records to the State Police every April and October? | | |
| 20) Do the records include the make, model, caliber or gauge, manufacturers, name, and serial number of all firearms, rifles, and shotguns that are acquired or disposed of not later than one business day after their acquisition or disposition ? | | |
| 21) Are monthly backups of paper records maintained in a secure container designed to prevent loss by fire, theft, or flood? | | |
| 22) If the dealer chooses to maintain and electronic-based record system, are those records backed up on an external server or over the internet at the close of business each day? | | |
| 23) Does the dealer record the date, name, age, occupation, and residence of any person from whom a firearm is received or to whom a firearm is delivered, and the caliber, make, model, manufacturer's name and serial number, or if none , any other distinguishing number or identification mark on such firearm? | | |
| 24) Are all firearms, rifles and shotguns accounted for through an inventory check prepared once each month and maintained in a secure location? | | |
| 25) Is sold firearm, rifle, and shotgun disposition information, including serial numbers, dates of sale, and identity of purchasers, maintained and available at any time to government law enforcement agencies and to the manufacturer of the weapon or its designee? | | |
| 26) Are the records documenting the acquisition, disposition, tracing, and other transactions involving firearms, rifles and shotguns maintained for at least twenty years following each transaction? | | |

3

# NY Dealer Certification / Compliance Checklist

| | Yes | No |
|---|---|---|
| 27) Does the dealer maintain records of criminal firearm, rifle and shotgun traces initiated by the ATF? | | |
| 28) Are ATF Form 4473 transaction records retained on the dealer's business premises in a secure container designed to prevent loss by fire, theft, or flood? | | |
| 29) Does the dealer implement and maintain sufficient internal procedures to ensure compliance with Article 39-BB of the General Business Law? | | |
| 30) Does the dealer annually certify to the New York State Police, by January 31 of each year, that the dealer has complied with all of the requirements of Article 39-BB of the General Business Law? | | |
| 31) Does the dealer provide the Division of State Police full access to the dealer's premises for periodic inspections? | | |

Additional Comments

Signature

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

_____

**Nadine Gazzola**, individually, and as co-owner,
President, and as BATFE Federal Firearms Licensee
Responsible Person for **Zero Tolerance**
**Manufacturing, Inc.**; *et al.*

      *Plaintiffs*

  *v.*

**KATHLEEN HOCHUL**, in her Official Capacity as
Governor of the State of New York; *et al.*

      *Defendants*

_____

**DECLARATION OF PLAINTIFF NADINE GAZZOLA**
**– ZERO TOLERANCE MANUFACTURING, INC.**

1.    I am Nadine Gazzola and I make this Declaration under penalties of perjury. These statements are true to the best of my knowledge, and are based upon my personal knowledge and experience unless otherwise specified.

2.    As lead plaintiff in the above-captioned case, I have read and am familiar with the contents of this emergency motion, specifically, and the record of this case, generally. I attended court appearances with argument by counsel both at the Northern District Court and the Second Circuit Court of Appeals.

3.    I submit this affidavit in support of the emergency motion. I incorporate as if set forth herein the explanations of the definitions of the word "firearms" at federal and at state law, and of the reading of the new (2022) state law as limiting the defendants, at best, to that of

a "partial POC state" and at best to inspections of NY-licensed dealers in handguns.

I concur with the description of the federal and state laws relating to what types of firearms may be sold under which federal and state license. It is clear to me that any attempt by the defendants to take over all firearms background checks – as the term "firearms" is understood at federal law – would exceed their state-level authority. It would also exceed state-level authority for the defendants to audit all federally-licensed dealers or even all FFL Type-01s.

4. I continue to object to everything set forth in our original motion for TRO/PI, and continue to ask the Second Circuit to rule in favor of the plaintiffs on our appeal of the request for preliminary injunction. I continue to object to the defendants' intention to push their way in between our federally-licensed business and the FBI-NICS Unit, as set forth in my Declaration in support of the TRO/PI. [N.D.N.Y. Doc. 13-2]

5. This emergency motion is necessitated by the defendants' bad acts. I ask this court to rule on this emergency motion ahead of Wednesday, September 13, 2023, in order to (a.) stave off any impending arrest of one or more plaintiff(s) and any other FFLs similarly situated; (b.) stop the defendants from initiating a background check system on all firearms (federal definition) in excess of state authority; (c.) stop the defendants from conducting compliance audits on all federal firearms licenses, regardless of type or state license, in excess of state authority; and, (d.) stop the defendants from launching an ammunition background check, which system has not been certified as operational.

6. I continue, on behalf of the plaintiffs, to request the court rule in our favor on the already-pending appeal of our comprehensive motion for preliminary injunction. In submitting this emergency motion, I do not waive any argument or request previously submitted.

7. **FBI e-mail authentication.** My role in supporting this emergency motion is to authenticate the two e-mails I received from the Federal Bureau of Investigations NICS Unit ("FBI-NICS") on Wednesday, August 23, 2023 and again on Friday, August 25, 2023. Attached to this affidavit are complete copies of these two e-mails with attached .PDF of a notification letter[1] from NYS Gov. Kathleen Hochul and NYSP Acting Superintendent Stephen Nigrelli.

8. I received the first e-mail (August 23, 2023) to my business e-mail address of ZeroToleranceCorp@gmail.com. This is the e-mail address I submitted on the ATF/FBI license application and renewal forms, which I submit every three years. My federal license most recently renewed this year.

9. I received the second FBI-NICS e-mail (August 25, 2023) to my personal e-mail address of N██████████@gmail.com[2]. My person e-mail address is not part of my federal or state license process.

10. **Zero State Police Communication**. I have received <u>no</u> communication from the NYSP, either by USPS first class mail, e-mail, or otherwise, either since on or about July 25, 2023 or at any prior time. I did <u>not</u> receive the Hochul-Nigrelli notification letter directly from the NYSP. I did <u>not</u> receive the "Angie" e-mail. No officer has visited our shop, nor has an officer provided me with a copy of the 4-page dealer compliance checklist.

---

[1] A comparison of the Hochul-Nigrelli letter attached to the FBI-NICS e-mail shows the date line is removed, altogether, as compared to the letter received by Mr. Jarred Ford (attached to this emergency motion).

[2] Plaintiff's personal e-mail address was redacted by her Counsel.

11. The Zero Tolerance Manufacturing state license original application and renewal applications went through our local Columbia County Clerk's Office. The process of going through the county clerk's office for the state dealer's license and renewal is, upon information and belief, the same for all FFLs in New York. The NYS Police role in the state license and renewal is non-existent. The license and the renewal is reviewed and signed by a county court judge. Upon information and belief, the county sheriff's office initiates the background checks as part of that process. From beginning to end, as a "state-licensed dealer," I have no direct contact with or from the state or the NYS Police.

12. Our business premises is in Ghent, Columbia County, New York. It has been at this location since we first obtained our original federal and state licenses in 2015. This is the business premises address I provided on each application and renewal form for our federal and state licenses.

13. I am available to provide testimony or further written submission, if the court requests it.

**Whereas,** I respectfully request this emergency motion be granted in favor of the plaintiffs.

Dated: August 27, 2023

_____
Nadine Gazzola

# Fwd: FFL registration with NY State Police

From: Zero Tolerance (zerotolerancecorp@gmail.com)

To: pcapanna@yahoo.com

Date: Sunday, August 27, 2023 at 04:44 PM EDT

---------- Forwarded message ---------
From: **nicsliason@fbi.gov** <nicsliason@fbi.gov>
Date: Wed, Aug 23, 2023 at 11:45 AM
Subject: FFL registration with NY State Police
To:

The NICS Section has been asked to send out this notice from NY to the FFLs we have on file.

All New York federal firearms licenses (FFL),

On September 13, 2023, the FBI NICS E-Check service and FBI NICS call center will no longer be available for NY FFLs to initiate new firearm background checks.  All FFLs are required to register with the NY State Police to begin processing firearm background checks.

Please see the attached information for instructions and contact information should you have any questions.

Eric Moore

NICS BRT

--
Nadine and Seth Gazzola

Zero Tolerance Manufacturing Inc.

518-938-1335

 NY Public Awareness.pdf
119.9kB



**KATHY HOCHUL**
Governor

**STEVEN A. NIGRELLI**
Acting Superintendent

**To:** **New York State Firearm Dealers and Ammunition Sellers**

Pursuant to Executive Law § 228, New York has been designated a Point of Contact state for the purpose of processing National Instant Background Check ("NICS") transactions. This means that starting on September 13, 2023, background check requests for firearm, rifle, shotgun, and ammunition purchases will be submitted to the New York State Police, and dealers will no longer submit requests directly to FBI NICS.

As a dealer, you and your staff will be required to register on the NYSNICS.ny.gov web application in advance of New York becoming a Point of Contact State. Instructions on the registration process will be posted on the https://NYSNICS.ny.gov site.

Effective September 13, 2023, prior to transferring a firearm, rifle, shotgun, or ammunition to a purchaser, you must go to https://NYSNICS.ny.gov to complete the background check process.

An Interactive Voice Response (IVR) telephone solution will be implemented as well so you may call in a background check request to 1-877-NYS-NICS should the online system be unavailable. To use this functionality, you must have already set up your business's online profile and have a saved payment method on file in the NYSNICS application which you can register and login to at https://NYSNICS.ny.gov.

Please visit https://NYSNICS.ny.gov for more details about Point of Contact.

New York State Police
NYS NICS Unit
1-877-NYS-NICS
NYSNICS@troopers.ny.gov

Case 23-3069, Document 90, 08/29/2023, 3562455, Page61 of 62

From: Nadine Gazzola (█████████@gmail.com)

To: pcapanna@yahoo.com

Date: Sunday, August 27, 2023 at 04:45 PM EDT

---------- Forwarded message ---------
From: **nicsliason@fbi.gov** <nicsliason@fbi.gov>
Date  Fri, Aug 25, 2023 at 7 15 AM
Subject: FFL registration with NY State Police
To:

The NICS Section ha  been a ked to  end out thi  notice from NY to the FFL  we have on file

All New York federal firearm  licen e  (FFL),

On September 13, 2023, the FBI NICS E Check  ervice and FBI NICS call center will no longer be available for NY FFL  to initiate new firearm background checks.  All FFLs are required to register with the NY State Police to begin processing firearm background checks.

Please see the attached information for instructions and contact information should you have any questions.

Eric Moore

NICS BRT

**Nadine Gazzola**
Owner  Zero Tolerance Gun Shop
Assistant Manager - Pulcher Transportation/ AIRCO Inc

 NY Public Awareness pdf
119.9kB



**KATHY HOCHUL**
Governor

**STEVEN A. NIGRELLI**
Acting Superintendent

**To:    New York State Firearm Dealers and Ammunition Sellers**

Pursuant to Executive Law § 228, New York has been designated a Point of Contact state for the purpose of processing National Instant Background Check ("NICS") transactions. This means that starting on September 13, 2023, background check requests for firearm, rifle, shotgun, and ammunition purchases will be submitted to the New York State Police, and dealers will no longer submit requests directly to FBI NICS.

As a dealer, you and your staff will be required to register on the NYSNICS.ny.gov web application in advance of New York becoming a Point of Contact State.  Instructions on the registration process will be posted on the https://NYSNICS.ny.gov site.

Effective September 13, 2023, prior to transferring a firearm, rifle, shotgun, or ammunition to a purchaser, you must go to https://NYSNICS.ny.gov to complete the background check process.

An Interactive Voice Response (IVR) telephone solution will be implemented as well so you may call in a background check request to 1-877-NYS-NICS should the online system be unavailable.  To use this functionality, you must have already set up your business's online profile and have a saved payment method on file in the NYSNICS application which you can register and login to at https://NYSNICS.ny.gov.

Please visit https://NYSNICS.ny.gov for more details about Point of Contact.

New York State Police
NYS NICS Unit
1-877-NYS-NICS
NYSNICS@troopers.ny.gov